# GEORGE BROSSARD v. S. H. KOOP AND OTHERS.[1]

July 2, 1937.

Nos. 31,172, 31,173, 31,174.

[1]Reported in 274 N. W. 241.

*Cobb, Hoke, Benson, Krause & Faegre* and *Raymond A. Scallen,* for appellant D. C. O'Conner.

*Phillips & Sherwood,* for appellant H. E. Koop.

*Sexton, Mordaunt, Kennedy & Carroll,* for appellant S. H. Koop.

*F. W. Russell* and *Peter Ahles,* for respondent.

HOLT, JUSTICE.

Plaintiff sued for malpractice and secured a verdict against the three doctors who participated in an operation upon him for a diseased gall bladder. Each defendant appeals separately from the order denying his separate motion for judgment notwithstanding the verdict or a new trial.

The facts are these: Defendant O'Conner is a physician, but does no surgery. Defendants Koop are physicians who perform surgical operations. Plaintiff, about 50 years old, suffered from an acute attack of obstruction of the gall bladder duct and called O'Conner, of Eden Valley, on December 16, 1935. The doctor came and diagnosed the case correctly and advised an operation. The next day plaintiff agreed to submit to an operation, and on the 18th the doctor took plaintiff in his car to Richmond, where there was a hospital conducted by defendant S. H. Koop. Defendant H. E. Koop, located at Cold Springs, was summoned to take part, and in the afternoon, after further examination and consultation between the three doctors, the operation was undertaken. O'Conner administered the ether, and the surgical part was performed by H. E. Koop, assisted by S. H. Koop. Untoward conditions were encountered when the gall bladder was reached, and the patient passed into a state of shock. It was concluded that the operation could not be completed and that the patient must be quickly put to bed

and restoratives applied. Before that was done drainage must be established and the incision closed. In the operation packs or gauze sponges were used to keep back the unaffected organs from the field of operation, that is, from that part of the liver to which the gall bladder was attached, and also to absorb and remove blood and fluids found in the cavity reached by the incision. As speedily as possible drainage tubes were inserted and the incision sutured, the patient was removed from the operation table to a bed, and restoratives to bring him out of shock were successfully applied. After a 20-day stay at the hospital plaintiff left for his home. On January 30 O'Conner visited him and advised that he go to the hospital for examination because the wound was discharging pus. Plaintiff did not go, and excused the failure for the reason that he had lost confidence in the doctors. The wound did not heal, and plaintiff did not seem to recover and suffered pain. So, on March 4, he sought the services of Dr. Brigham at Watkins, who, on the 13th of that month, discovered a piece of gauze protruding from the wound, and presently extracted a pack, 10 inches by 15 inches, of several layers of gauze stitched together. A mass of pus was discharged. In a short time the discharge abated, and the wound healed. The services of Dr. Brigham were of the value of $200, according to his testimony. The hospital was a defendant, but a verdict was directed in its favor at the close of the evidence. A verdict in the sum of $4,000 was rendered against the other defendants. This was reduced by the court to $3,000.

We have reached the conclusion that the court erred in denying the motions of Dr. O'Conner for a directed verdict and for judgment *non obstante.* Dr. O'Conner was first called by plaintiff to treat him. But the record is undisputed that he advised plaintiff to go to the Richmond hospital for an operation. There is no intimation that Dr. O'Conner expressly contracted with plaintiff to cause it to be performed. It was taken for granted that the doctors Koop brothers, who practiced surgery, were to perform the operation, and that Dr. O'Conner should administer the anesthetic. The villages at which each of these defendants practiced are small, and only in Richmond, where there was a hospital, could the operation well be

performed. The only claim of malpractice made by the complaint and sought to be established by the evidence was the failure to remove the pack of gauze, later extracted by Dr. Brigham. Dr. O'Conner's diagnosis of plaintiff's ailment is conceded to have been correct. His advice that an immediate operation was necessary is not questioned. Nor is his conclusion disputed that plaintiff during the operation unexpectedly passed into a state of shock, requiring quick action to provide drainage, close the wound, get the patient in bed, and apply proper restoratives. There is not the slightest criticism of the facilities of the hospital to which plaintiff was brought, nor is the skill and surgical ability of either of the Koops put in issue. In fact, nothing about the advisability of the operation, the manner in which it was performed, the drainage provided, or the care given plaintiff as long as he was under the care of either defendant, is pointed to in the evidence as faulty or contrary to good practice. There is no evidence of a joint employment of the three doctors; they as well as plaintiff understood that the Koops were to operate and O'Conner was to administer the ether. It took the latter some 15 or 20 minutes to put plaintiff in condition so that the surgeons could begin. The one giving the anesthetic must give close attention to the patient so as to keep him continuously unconscious, yet short of endangering life. It was unthinkable that O'Conner should explore the wound to see whether the sponges or packs had been removed before the incision was closed. The slit in the abdomen was only seven or eight inches long. It was deep. From his position near the head of plaintiff, busy with what he had to do, there was no opportunity to see what use and disposition were made of the gauze packs. If any doctor or nurse is negligent in any act or omission connected with an operation it is right and just that such a one be held responsible; but where several have distinct and separate parts to take which require the undivided attention of each, only the one who fails to use due care in the performance of the part assigned to him should be held responsible. The fact that O'Conner received from plaintiff the entire compensation and distributed the same to the hospital, the Doctors Koop, and himself is not of much significance. From the very first plaintiff

understood that O'Conner would not operate. The action was not tried on the theory that O'Conner had contracted with plaintiff for the operation and had failed to fulfill the contract; but was tried as one in tort, the special negligent act being the failure to remove the pack later extracted by Dr. Brigham. In the operation it was well understood by both plaintiff and those who participated therein that each of the latter had certain matters to attend to. The operating surgeon must have one who administers the anesthetic and watches the patient's condition, and one or more to assist in tying blood vessels and to hand him the needed instruments and appliances; for it is important that the patient be kept under no longer than absolutely necessary to finish the operation. It may be said that each one who participates is engaged to do what has been assigned to him, and is answerable for any negligent performance thereof, but is not liable for some act or omission of some other participant of which he had or could have no knowledge. This proposition is well formulated in respect to operations in Morey v. Thybo (C. C. A.) 762, 42 L.R.A.(N.S.) 785, 199 F. 760:

"Two physicians, independently engaged by the patient and serving together by mutual consent, necessarily have the right, in the absence of instructions to the contrary, to make such a division of service as in their honest judgment the circumstances may require. Each must not only bring to the case the ordinary knowledge and skill of the profession, but also give his best personal attention and care. * * * Each, in serving with the other, is rightly held answerable for his own conduct, and as well for all the wrongful acts or omissions of the other which he observes and lets go on without objection, or which in the exercise of reasonable diligence under the circumstances he should have observed. Beyond this, his liability does not extend."

The evidence was there held insufficient to hold the physician who gave the anesthetic liable for the malpractice of the operator. The following decisions from other states justify our conclusion that Dr. O'Conner is entitled to judgment *non obstante:* Robinson v. Crotwell, 175 Ala. 194, 57 So. 23; Nelson v. Sandell, 202 Iowa, 109,

209 N. W. 440, 46 A. L. R. 1447; Jett v. Linville, 202 Ky. 198, 259 S. W. 43; Shannon v. Ramsey, 288 Mass. 543, 193 N. E. 235; Guell v. Tenney, 262 Mass. 54, 159 N. E. 451; Brown v. Bennett, 157 Mich. 654, 122 N. W. 305; Mayer v. Hipke, 183 Wis. 382, 197 N. W. 333. Concededly O'Conner handled no gauze pack. There was no evidence that it was possible for him to see or know of the packs employed or that he discovered or by due care could have discovered that the one afterward brought to light remained in when the incision was closed. On the record he is entitled to judgment notwithstanding the verdict.

Appellants Koop also claim that they are entitled to judgment and that the verdict is without support and contrary to law. On the witness stand they both virtually conceded that the sponge was inserted by them and should have been removed, but was not. It seems to us that the unintentional leaving in the body of the patient operated upon of a pack, sponge, or any other substance, is evidence from which a jury may find negligence. Walker v. Holbrook, 130 Minn. 106, 153 N. W. 305; Fowler v. Scheldrup, 166 Minn. 164, 207 N. W. 177. We do not think either one of the Koops was entitled to a directed verdict.

Each assigns error upon this part of the charge: "Now, the burden of proof is on the defendants in this case to establish their claims that they were warranted and excusable in not having removed the gauze at the time in question. This they must sustain by a fair preponderance of the evidence." Standing alone, the two quoted sentences are not technically correct. The burden is upon plaintiff to show that the gauze pack remained in plaintiff's body because of defendants' negligence. Forrest v. Abbott, 219 Iowa, 664, 259 N. W. 238; Niebel v. Winslow, 88 N. J. L. 191, 95 A. 995; Ault v. Hall, 119 Ohio St. 422, 164 N. E. 518, 60 A. L. R. 128; Jackson v. Hansard, 45 Wyo. 201, 17 P. (2d) 659. There are also decisions to the effect that the leaving in the incision or wound a pack or sponge or foreign substance is negligence *per se* and calls on the surgeon to show that it was not left through his neglect. Sellers v. Noah, 209 Ala. 103, 95 So. 167; Saucier v. Ross, 112 Miss. 306, 73 So. 49; Davis v. Kerr, 239 Pa. 351, 86 A. 1007, 46 L.R.A.(N.S.)

611; Evans v. Munro (R. I.) 83 A. 82; McCormick v. Jones, 152 Wash. 508, 278 P. 181, 65 A. L. R. 1019. All the authorities hold that the finding of a pack or gauze sponge, or any other foreign substance not inserted for drainage purposes, in the incision made in an operation, is evidence which bears upon the issue of proper care of the surgeon operating. The instruction challenged is technically incorrect, for upon the plaintiff remains the burden until the close of the testimony to establish the negligence alleged as the proximate cause of the injury, and it is not upon the defendant to prove that the conduct was warranted or excusable. However, in the trial of a case the proof introduced by plaintiff or admissions made by defendant may bring the evidence to a point where defendant's negligence stands established unless he comes forward with proof which excuses or acquits him of neglect. In the case at bar the Koops admitted that the pack was used by them, that it was not, but should have been, removed; that it was not left there for drainage purposes; and, in short, that their duty was to remove it before closing the incision. The evidence standing thus, defendants went forward with proof that an unusually unfavorable condition was found when the body was opened and that before this could be thoroughly explored the patient went into shock, forcing a hurried termination of the operation. Quickly drainage must be established, the incision closed, the patient put to bed, and restoratives applied. An emergency arose, in coping with which one cannot always be expected to do the most prudent act. Under the circumstances here present, where defendants apparently realized that plaintiff's case called upon them to prove some ground or excuse for failure to remove the pack, it cannot be said that the instruction, though faulty, was prejudicial.

In this connection it is advisable to state that it cannot be held that the evidence is insufficient to sustain a recovery against either one of the Koops. There is no distinction to be made as to their conduct with respect to this sponge. Neither one attempts to shift to the other or to anyone else the responsibility for its being left in the incision. They admit that it is good practice to count the packs before use and before closing the incision, and that it was

not followed in this instance. We need not further discuss the evidence. It is enough to say that it was for the jury to determine whether the failure to remove the pack was excusable. Certainly the record justifies the implication of negligence in leaving it in the body. We appreciate that defendants were confronted with a serious situation requiring quick decision and action to save a life. Though skilled and capable, defendants Koop were still young in the practice, having had but about ten years of experience, and we can readily understand that they may have failed in doing what more experienced surgeons would not have left undone. But, after all, it was for the jury to pass on their excuse. That the leaving of the pack in the wound proximately caused expense, pain, and suffering to plaintiff is almost demonstrable. We have not overlooked Dr. H. E. Koop's testimony that the presence of the pack was fortunate in furnishing added drainage. The jury were not required to accept that view of the matter.

The verdict as reduced is assailed as excessive and rendered by the jury under the influence of passion or prejudice. The majority of the court conclude that it should not be further reduced. Plaintiff incurred an expense of $200 to Dr. Brigham for treatment in connection with the presence of the pack in his body. There was enough in the evidence to lead the jury to believe that all of his treatment was necessitated because of the pack being left in the wound. There was pain, suffering, and continuous weakness claimed by the plaintiff. How much thereof came from the overlooked pack was for the jury to determine.

Some assignments of error go to questions asked of Dr. Brigham. It is impossible to see in the answers given anything to harm defendants, for Dr. Brigham's final conclusion as to any permanent injury to plaintiff from the presence of the gauze pack in his body is very favorable to defendants.

Both of defendants Koop in the motions for new trial charged misconduct of plaintiff's counsel in his argument to the jury. In this appeal only in behalf of S. H. Koop is any assignment of error in respect of misconduct made. To us there appears nothing which

may justly be regarded as improper in the address to the jury by plaintiff's counsel.

The order is reversed as to appellant O'Conner and the cause remanded with direction to enter judgment in his favor notwithstanding the verdict; and the order is affirmed as to appellants Koop.