SELMA SIMON v. LAWRENCE LARSON AND ANOTHER.[1]

May 16, 1941.

No. 32,800.

See 207 Minn. 605, 292 N. W. 270.

*A. M. Gunn* and *Roy E. J. Puelston,* for appellant.

*Hoke, Cobb & Janes,* for respondent.

HILTON, JUSTICE.

This case comes here for its second consideration. See Simon v. Larson, 207 Minn. 605, 292 N. W. 270. On the first appeal we affirmed the action of the trial court in granting a new trial for

[1]Reported in 298 N. W. 33.

error in admitting certain medical testimony for plaintiff. On the new trial, which was limited to the issue of actionable negligence, no additional evidence was adduced. The trial consisted solely of a reading by counsel of the unobjectionable portions of the record of the first trial. At its conclusion the trial court directed a verdict for defendant. Plaintiff now appeals from an order denying a motion for a new trial.

Plaintiff seeks damages for injuries suffered as a result of an operation performed to correct a condition known as varicose veins. Previous treatment of the condition by local injection directly into the affected area of the legs had been ineffective, and plaintiff underwent a different treatment known as the ligation method under care of defendant Lawrence Larson. Under this method a local injection is not used. Instead an incision in the groin is made and a large vein (saphenous) lying shortly below the surface is exposed and isolated from surrounding tissues. That vein is severed after the flow of blood has been interrupted by use of clamps. The portion of the vein above the severance is tied and disregarded. The portion running down into the leg is then injected with an irritating solution (sodium morrhuate) designed to put that vein and its tributaries out of order. This is accomplished by placing a blunt needle (cannula) into the severed end of the vein, tying it fast, and discharging the solution. This then runs downward into the affected areas of the leg.

At first only a local anesthetic was administered to plaintiff. However, the severe pains which she suffered when the solution was discharged into her left leg required gas to relieve her. Then the same process was repeated on the right leg. After the operation the pain continued in the left leg and other complications were observed. She developed a condition known as sloughing. This occurs when tissues die from a lack of nourishment, inducing the appearance of gangrene. Where on plaintiff's left leg the sloughing first appeared is a subject of some dispute. However, it was quite generally present on the lower thigh and knee region. The symptoms were a blistering and breaking of the skin and flesh as

part of a degenerative process. Plaintiff's particular reaction was unusual and stimulated rather widespread medical interest. For all normal purposes, her left leg, now paralyzed, is useless. Her right leg recovered perfectly. The trial court, in face of testimony from experts that the cause was unknown, did not believe that it was warranted in submitting the question of causation to the jury. Plaintiff advanced no medical testimony in the second trial.

The only question presented for decision is whether there was enough evidence of actionable negligence on part of defendant to make the case one for the jury. Plaintiff does not claim, as in many malpractice cases, that defendant lacked requisite skill or that there was a departure from recognized practice in treatment. Her claim is that in using a recognized technique defendant failed to use ordinary care, with the result that the solution which should have been confined to the interior of the vein was carelessly spilled in the vicinity of the incision, causing sloughing. This theory of liability, it is said, does not require medical testimony to fortify its existence.

There may be some force to the contention that medical authority is not always necessary in these cases. Moehlenbrock v. Parke, Davis & Co. 145 Minn. 100, 176 N. W. 169; Myrlie v. Hill, 58 S. D. 330, 236 N. W. 287. But where certain facts of medical science have been established by uncontradicted testimony of experts, we cannot ignore those facts in passing upon the action of the trial judge. The mere fact of occurrence does not prove negligence.

According to plaintiff's theory, in the injection of the cannula into the open end of the vein defendant carelessly caused a hole to be made in the vein or its tributaries permitting the fluid to escape into the tissues. It would seem that before this view would be entitled to credence proof was essential that contact of sodium morrhuate with tissue was dangerous or likely to produce sloughing. Yet there was testimony that in the treatment of hernia this solution is injected directly into the tissues without producing sloughing. In fact, the reason that sodium morrhuate superseded salt as an irritant is its tendency not to cause sloughing. Al-

though minor sloughs have been known to follow the ligation method, these are difficult to avoid despite all reasonable precautions. Some spillage ("a few drops") is not uncommon or regarded as dangerous.

Cross-examination of defendant by plaintiff's counsel did produce some favorable medical evidence. Thus sloughs were said to be possible if sufficient amounts of sodium morrhuate were used, but the amount necessary differed with individuals. Also, neither defendant nor his coexpert knew of any medical authority which said that sodium morrhuate would not produce sloughs. Here, however, a standard amount of two and one-half to three c. c. (about half a teaspoon) was used. The identical quantity produced different results on the two legs. Defendant had never used in excess of five c. c. but had heard of 25 c. c. being used without producing sloughs. Plaintiff in no respect, circumstantially or otherwise, established what quantity was likely to produce sloughing nor that such quantity had been used here. Without that proof, reasoning from the fact of sloughing to the fact of improper spillage would be wholly conjectural.

As indicative of neglect, reliance is placed upon the fact of pain which plaintiff experienced when the fluid was discharged into the vein. But the presence of pain in this type of operation was said not to be a distinguishing feature. The process requires the injection of an irritating solution into a vessel containing sensory nerves, and "a great many people do have a certain amount of pain, at least 20 per cent of them do."

Evidence that the condition arose from the negligent injection of sodium morrhuate is said to be present because, according to the plaintiff's testimony, the sloughing first occurred at the site of the incision. Should the preponderance of the evidence be accepted, this proposition would fail. The medical testimony was that the sloughing began at least six inches below the incision and was quite generally present down to the knee in the same degree of involvement. But even taking the plaintiff's version of the place of origin, this meets uncontradicted medical testimony that

where sloughing occurs at the site of the incision the inflammation and involvement are localized there. Here the involvement was too general and extensive to be reconciled with plaintiff's theory.

Under this state of the evidence, where about all plaintiff had to rely upon was the fact of injury plus claims as to the place of origin and an unestablished assertion that the sodium morrhuate was the cause of the sloughing as opposed to the view of all experts in the case that the cause of this unfortunate accident was unknown, we acquiesce in the view that the facts did not present a jury issue on the questions of negligence and causation.

Order affirmed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.