Dan S. THOMPSON, Plaintiff,

v.

C. Walton LILLEHEI, Richard Varco, Herbert Warden, Earl Schultz, Joseph Buckley, James Matthews, University of Minnesota, and The Regents of the University of Minnesota, Defendants.

Geraldine B. THOMPSON, Plaintiff,

v.

C. Walton LILLEHEI et al., Defendants.

Civ. Nos. 5538, 5539.

United States District Court
.D. Minnesota,
Fourth Division.

Sept. 3, 1958.

Harry H. Peterson, Edward Kenneally, Minneapolis, Minn., for plaintiffs.

William B. Randall, St. Paul, Minn., Harold J. Carroll, Minneapolis, Minn., for defendant Buckley.

Hyman Edelman, Minneapolis, Minn., for defendant Warden.

Frank Janes, Minneapolis, Minn., for defendant Varco.

B. B. Markham, Minneapolis, Minn., for defendant Lillehei.

DEVITT, District Judge.

This is an action for malpractice against the University of Minnesota, its Board of Regents, and six medical doctors, all members or former members of the University of Minnesota Medical School faculty. The plaintiff, Geraldine Thompson, suffered injuries to her person allegedly as the result of negligence in the performance of certain medical procedures. She and her husband, the other plaintiff, sue to recover damages. There is diversity of citizenship between the parties.

In recent years members of the University of Minnesota Medical School faculty have specialized in the performance of so-called "open heart" surgery, principally upon small children born with ventricular septal defects. This defect is described in layman's language as a hole between the two pumping chambers of the heart. Until recently such a birth defect was viewed as being fatal. These doctors have established a "controlled cross circulation" procedure for successfully operating upon such defects. This method contemplates that the patient will be temporarily sustained by a "donor", who occupies an adjoining table during the operation, and who, through a system of connecting tubes, furnishes heart and lung facilities to the patient while the heart is operated upon to cure the defect.

The defendants Lillehei and Varco, both surgeons, have established reputations as experts in this field. They have performed many such operations and have conducted lectures and written professional papers explanatory of the procedure. The operation here involved was to be the 17th of its kind.

The plaintiffs' 8-year-old daughter, Leslie Ann, was born with a ventricular septal defect. Plaintiffs arranged, principally through defendant Lillehei, for the performance of a controlled cross circulation operation upon her. The opertion was started on the morning of October 5, 1954. The patient's mother, Mrs. Geraldine Thompson, was to serve as the donor. Medical procedures preparatory to the actual heart operation took several hours. The patient and the donor were placed on adjoining operating tables about four feet apart. Both were anesthetized. All of the defendants here named were in the operating room. Others, mostly medical students and nurses, were also in the room. Drs. Lillehei and Varco were at the patient's operating table in the capacity of surgeons. Dr. Buckley was there as an anesthesiologist.[1] Dr. Warden was at the donor's operating table as a surgeon. One Dr. X, not a defendant, was at this table as an anesthesiologist.

Prior to the contemplated commencement of the actual heart surgery on the girl, and before the cross joinder with the mother had been effected, an inordinate event took place at the donor's table. It was reported by those present there that it was impossible to detect the donor's heartbeat or blood pressure. There was evidence that a bottle of glucose and water hanging overhead, from which a tube entered her veins, had be-

---

1. An "anesthesiologist" is a medical doctor who specializes in anesthesiology. "Anesthetist" is the term applied to one, not a medical doctor, who administers anesthetics.

come empty. Such a device, called an "i. v." (intravenous), is commonly used in surgical procedures. First aid methods were employed. She was restored. An operating diagnosis of air embolism was made. This is described as bubbles of air getting into the veins. The contemplated operation on Leslie Ann was abandoned. Allegedly as a result of the air embolism, the donor, Mrs. Thompson, suffered a brain injury. She was hospitalized at the University of Minnesota Hospital for five months. She has been partially incapacitated since. There was evidence that Mrs. Thompson has undergone substantial physical and mental change, and that her injuries will be permanent.

The plaintiffs' theory is that the defendants were negligent in the manner in which they conducted the surgical procedures, specifically in permitting the glucose and water container to become empty and thus to cause an air embolism to get into the blood stream, and that this negligence was the cause of the injuries suffered. Defendants deny negligence and deny any causal connection between the events transpiring in the operating room and the brain injury.

Prior to trial, the Court dismissed the lawsuit as to the University of Minnesota and the Regents of the University of Minnesota. Plaintiffs had no objections to this. Each is a state governmental body, immune from suit.

The Court granted motions for directed verdicts as to the defendants Schultz and Matthews upon the close of plaintiffs' case. They are medical doctors, but were essentially bystanders to the events.

The issues went to the jury as to the defendants Lillehei, Varco, Warden and Buckley, after the Court had denied their motions for directed verdicts at the close of the testimony. Denial of such motions is in accordance with recommended policy and is a common procedure in the Federal Courts. See Montgomery Ward & Co. v. Duncan, 1941, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; Fratta v. Grace Lines, 2 Cir., 1943, 139 F.2d 743; Craighead v. Missouri Pac. Transp. Co., 8 Cir., 1952, 195 F.2d 652. The jury was unable to agree upon a verdict and was discharged.

For consideration now are the motions of these four defendant-doctors for orders directing the entry of judgment in their favor notwithstanding the failure of the jury to agree, as is authorized by Rule 50(b) of the Rules of Civil Procedure, 28 U.S.C.A. In effect, I am asked again to rule on the motions for directed verdicts.

■■ The Court has power to enter judgment for the defendants notwithstanding the inability of the jury to agree, if there is an absence of any substantial evidence to prove liability and damages. I may not weigh the evidence. I may not grant the motion if a jury question is present. The issue is a legal one as to whether the plaintiffs, under all the evidence and reasonable inferences to be drawn therefrom, considered in the light most favorable to the plaintiffs, have made out a case as to each defendant. Schad v. Twentieth Century-Fox Film Corp., 3 Cir., 1943, 136 F.2d 991; see 2 Barron & Holtzoff, Fed. Prac. & Proc. § 1079, and cases cited.

I have no hesitation in concluding that the plaintiffs have presented no evidence of actual negligence on the part of any of of the defendants. Each performed his assigned duties in accordance with accepted medical standards. None of them omitted to do that which they should have done. Briefly examining the conduct of each, as reflected in the evidence, it appears that:

Dr. Lillehei was the surgeon at the patient's table. He performed no surgical procedure upon the donor. He was solely occupied with the preparatory operation upon the patient. Of necessity his back was to the donor's table. There was no showing that he failed in any responsibility following the emergency when it became impossible to de-

tect the donor's pulse, or at any other time.

Dr. Varco served as an assistant surgeon to Dr. Lillehei at the patient's table. He had no responsibility in connection with the surgical procedures or anesthetics on the donor.

Dr. Buckley was the anesthesiologist at the patient's table. He had no responsibility in connection with any procedures at the donor's table. Dr. Warden was assigned as surgeon at the donor's table. There was no evidence that he negligently performed or failed to discharge any of his responsibilities. One Dr. X, not a defendant in this lawsuit, was anesthesiologist at this table and, it would appear, was solely responsible for the administration of anesthetics and the operation of the "i. v." of glucose and water which allegedly became empty. There was no evidence indicating that this was Dr. Warden's duty.

It thus appears that there is no evidence of any negligence on the part of these four defendants. But the plaintiffs argue that each of these defendants is vicariously liable for the alleged negligence of somebody in the operating room who did something wrong to cause the air embolism which, it is said, brought about the brain injury. This argument is pressed only as to Dr. Lillehei. Although asserted as to the others, there is no plausible ground for considering it as to them.

In support of their theory as to the vicarious liability of Lillehei, plaintiffs point to evidence which shows that plaintiff, Dan S. Thompson, made first contact with Lillehei concerning the proposed operation on his daughter, and had several subsequent visits with Lillehei about it; correspondence between the two was exchanged; they arranged a date for the operation, and Lillehei allegedly assured Thompson that there was very little danger involved to the donor and that precautions would be taken to prevent an air embolism. Later Lillehei visited Mrs. Thompson in the hospital on several occasions and communicated with her husband as to the diagnosis of air embolism, and recommended needful physical therapy.

From this, plaintiffs urge that Lillehei was the surgeon in charge of the operation, exercised supervision over others participating in it, or should have done so, and is responsible for their conduct and liable for their acts of negligence, citing principally St. Paul-Mercury Indemnity Co. v. St. Joseph's Hospital, 1942, 212 Minn. 558, 4 N.W.2d 637.

Lillehei denies that he was in responsible charge of the entire operation. He claims he was responsible only for the heart operation on the patient. It appears from the evidence, without contradiction, that Lillehei and the other doctor-defendants are salaried members of the University of Minnesota Medical School faculty, engaged in teaching duties and surgical practice as members of a "team", by assignment of their respective superiors. Thus, one Dr. Wangensteen, head of the Department of Surgery, University of Minnesota Medical School, assigns the surgeons to scheduled operations, as he did in this case, and the corresponding head of the Anesthesiology Department assigns the anesthesiologists. Each of the doctors thus assigned is responsible to his respective Department Head, and subject to his direction. The defendants do not receive the fees paid for medical services. These fees go to the University.

Lillehei claims that he therefore had no power of direction over, or responsibility for, Dr. X in the discharge of his duties as anesthesiologist to the donor, and is not liable for his negligence, if any there be.

This recital summarizes the respective contentions of the parties on this issue. I am satisfied that the evidence supports Lillehei's position. There is no evidence to the contrary. There was no showing that Lillehei appointed or employed Dr. X or others in the operating room, or that he had any supervision or control over Dr. X or others.

at the donor's table, or that he had any knowledge of any negligent act being taken by others. Absent this, the doctrine of "respondeat superior" is inapplicable and Lillehei has no vicarious responsibility. Compare Morey v. Thybo, 7 Cir., 1912, 199 F. 760, 42 L.R.A.,N. S., 785 with St. Paul-Mercury Indemnity Co. v. St. Joseph's Hospital, supra.

And even assuming that Lillehei was "surgeon-in-charge" or "captain of the ship", as urged, does it follow that he is responsible for the negligence, if any, of an anesthesiologist such as Dr. X, assigned to the case by his own superior, exercising his own independent special medical knowledge in performing his duties without any specific directions from Lillehei? I don't think so. The cases so indicate. See, among others, Morey v. Thybo, 7 Cir., 1912, 199 F. 760; Brossard v. Koop, 1937, 200 Minn. 410, 274 N.W. 241; Nelson v. Sandell, 1926, 202 Iowa 109, 209 N.W. 440, 46 A.L.R. 1447; Runyan v. Goodrum, 1921, 147 Ark. 481, 228 S.W. 397, 13 A.L.R. 1403; Richardson v. Denneen, 1947, 192 Misc. 871, 82 N.Y.S.2d 623; Woodson v. Huey, Okl.1953, 261 P.2d 199; Meyer v. St. Paul-Mercury Indemnity Co., La. App., 61 So.2d 901 and Huber v. Protestant Deaconess Hospital Ass'n, Ind.App. 1956, 133 N.E.2d 864.

In the case of Meyer v. St. Paul-Mercury Indemnity Co., supra [61 So. 2d 910], the Court, in holding that ordinarily a surgeon cannot be held liable for the negligent acts of an anesthetist, quoted from Regan, Doctor and Patient and the Law, 103 (2d Ed. 1949), as follows:

"* * * if the anesthetist is a licensed physician, qualified in anesthesia, and if the entire charge of the administration of the anesthetic is placed in his hands, the operating surgeon is not, and it is submitted that he cannot reasonably be, liable for the anesthetist's negligence— except, of course, as such negligence * * * is observed * * * and nothing done about it."

In Brossard v. Koop, supra [200 Minn. 410, 274 N.W. 243], in a similar situation, the Minnesota Supreme Court outlined the scope of liability, where several doctors are engaged in an operation, in this language:

"* * * If any doctor or nurse is negligent in any act or omission connected with an operation, it is right and just that such an one be held responsible; but, where several have distinct and separate parts to take, which require the undivided attention of each, only the one who fails to use due care in the performance of the part assigned to him should be held responsible. * * *"

To extend the doctrine of respondeat superior to a situation such as that reflected in the evidence would be to strain the doctrine beyond the basis for its creation. See Prosser, Torts, 2d Ed. 1955, Sec. 62. There is no evidence that Lillehei engaged or directed Dr. X or any of the others in the operating room, or that he had the authority to do so. The evidence is to the contrary. The only evidence is that Lellehei was the one through whom the operation was arranged—the one who dealt with the plaintiffs in connection with it. This relationship does not spell out responsibility by Lillehei for every event which transpired in the operating room. It is manifest from the evidence, and especially from one of the exhibits received in evidence, that the plaintiffs contracted that the operation be performed, not by Lillehei, but by the "staff of the University Hospital". In granting permission for the operation, the plaintiff, Dan S. Thompson, signed a statement reading:

"I, the undersigned, hereby grant permission for an operation upon my daughter, Leslie Ann, *such operation to be performed by the staff of the University Hospitals.*" [Emphasis supplied.]

The case of St. Paul-Mercury Indemnity Co. v. St. Joseph's Hospital, supra, strongly relied upon by the plaintiffs, in-

volved a fact situation different from that presented here, and enunciated a principle of law inapplicable to this situation. There the Minnesota Supreme Court held that responsibility for injuries to a patient, inflicted by a hospital nurse, is not to be shared by the hospital in an action for contribution after the entry of the judgment against the doctor who performed the operation, where the nurse in question was assigned by the hospital to the supervision and direction of the operating surgeon.

Finally, we consider the evidence of proximate causation between the negligence of the defendants, assuming it to be shown, and the brain damage suffered by Mrs. Thompson. The law as to the proof required to show proximate causation in a malpractice case is clear and exacting.

■ The mere fact that an accident happened and that injuries are suffered does not establish liability as a matter of course. Doctors are not insurers of their patients' welfare or of the success of an operation. They are only required to possess the skill and learning possessed by the average member of their branch of the profession in good standing in that locality, and to apply that skill and learning with due care. Yates v. Gamble, 1936, 198 Minn. 7, 268 N.W. 670.

■ Plaintiffs here had the burden of proving that there was negligence, and that such negligence was the cause of the injury. It is well established that this proof must be something more than that which is consistent with their theory of how it happened. Plaintiffs must show that it is more probable that the harm resulted from some negligence for which the defendants were responsible than in consequence of something for which they were not responsible. Yates v. Gamble, supra; Williamson v. Andrews, 1936, 198 Minn. 349, 270 N.W. 6 and Simon v. Larson, 1941, 210 Minn. 317, 298 N.W. 33.

■ The doctrine of res ipsa loquitur does not apply to a case of this kind. The plaintiffs concede this. (Albeit much of their argument is based on the theory that it is applicable.) The law establishes it, and requires that plaintiffs prove their case through the testimony of medical experts. Yates v. Gamble, supra; Wallstedt v. Swedish Hospital, 1945, 220 Minn. 274, 19 N.W.2d 426.

■ Two medical experts testified. Dr. Robert Jeub testified for the plaintiffs. He said *he was unable to say what caused Mrs. Thompson's lesion of the brain.* He did say that air embolism can cause this type of brain lesion, but he also said that there are many other possible causes, such as congenital anomaly, traumatic congenital vascular anomaly, hemorrhage, embolism or thrombosis.

Dr. H. B. Hannah, expert for the defendants, categorically stated that *an air embolism could not cause a brain lesion.* He recited reasons for his opinion. In essense he said that an air embolism, in order to reach the brain, would have to pass through the heart. He said this was medically impossible, and was unknown to the profession. It would cause death upon reaching the heart.

It is thus apparent that plaintiffs have not proved, in accordance with the standards required by the Minnesota Supreme Court, that the injury was caused by the negligence of any of these defendants either directly or vicariously. A jury may not be permitted to speculate on the matter. A verdict must be founded on proof. Here there was no proof that the injury was caused by malpractice of the named defendants. Even the plaintiffs' medical expert could not say so. It may be that liability, if it exists, lies elsewhere. These defendants have not been shown to be at fault.

The motions of each of the defendants under Rule 50(b) are granted.