Norvin LEWIS and Delores Lewis, Plaintiffs-Respondents,†

v.

PHYSICIANS INSURANCE COMPANY OF WISCONSIN, Jay Seldera, M.D. and Wisconsin Patients Compensation Fund, Defendants-Appellants,

LAKELAND MEDICAL CENTER, The Dean Health Plan, Inc. and Donna Shalala, Defendants.

Court of Appeals

*No. 99–0001. Submitted on briefs April 4, 2000.—Decided April 25, 2000.*

2000 WI App 95

(Also reported in 612 N.W.2d 389.)

†Petition to review granted.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Christopher P. Riordan* of *Crivello, Carlson, Mentkowski & Steeves, S.C.*, of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Timothy J. Aiken* and *James C. Gallanis* of *Aiken & Scoptur, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1.   FINE, J.   Physicians Insurance Company of Wisconsin, Jay Seldera, M.D., and the Wisconsin Patient's Compensation Fund appeal from a judgment entered against them in favor of Norvin and Delores Lewis. The trial court held that Dr. Seldera was vicariously liable for the negligence of two operating-room nurses even though Dr. Seldera was not himself negligent and did not employ the nurses. We reverse.

## I.

¶ 2.   The parties have stipulated to the facts material to the trial court's determination and this appeal. In November of 1993, Dr. Seldera removed Mr. Lewis's gallbladder at Lakeland Medical Center in Elkhorn, Wisconsin. Unfortunately, one of the laparotomy pads used in the surgery was left in Mr. Lewis, and had to be removed in a later surgery.[2] According to the stipulation:

> Nurses Patricia Vickery and Ellen Chapman were in charge of counting the laparotomy pads used for the procedure. Under hospital procedure, the nurses, not Dr. Seldera, had responsibility for counting and overseeing the count of laparotomy pads used in the procedure. Both Nurse Vickery and Nurse Chapman were employed by Lakeland Medical Center at the time of Mr. Lewis' surgery. Neither nurse was employed by Dr. Seldera.

Indeed, Ms. Chapman, as the circulating nurse assigned to the operation, had an obligation under the

---

[2] A "laparotomy" is, as relevant here, an "[i]ncision through any part of the abdominal wall." STEADMAN'S MEDICAL DICTIONARY 869 (21st ed. 1966).

law to count the pads that was independent of who the surgeon was or what directions the surgeon might give. *See* WIS. ADMIN. CODE § HFS 124.13(7) (The " 'circulating nurse' " is "a registered nurse who is present during an operation . . . who, before the surgical procedure . . . is completed, . . . ensures that the sponge, needle and instrument counts have been done according to hospital policy."). The parties also stipulated that "Lakeland Medical Center is liable for the actions of Pat Vickery and Ellen Chapman under the doctrine of respondeat superior."

¶ 3.   The Lewises agreed in the stipulation that their only claim against Dr. Seldera turns on whether he "can be held vicariously liable for the negligence of the nurses." The Lewises do not contend that Dr. Seldera was negligent. They also do not contend that the nurses were Dr. Seldera's "borrowed servants."

¶ 4.   The trial court ruled that Dr. Seldera was liable for the negligence of the two nurses because, as the trial court expressed it during the course of its oral decision, as the operating physician, Dr. Seldera was the "captain of the ship" and, accordingly, was "responsible for everything." The trial court based this conclusion on the rationale that the patient goes to the doctor for medical treatment, and, therefore, reasonably expects "that doctor to do everything."

## II.

¶ 5.   The question presented by this appeal is whether a surgeon, as the "captain" of the operating room, is vicariously liable for the negligence of operating-room personnel not selected by the surgeon, where the surgeon is not negligent. We conclude that the answer to this question is "no."

¶ 6. As the parties recognize, this appeal from the trial court's grant of summary judgment presents a question of law only. Accordingly, our review is *de novo.* *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

¶ 7. Generally, a defendant is liable to a plaintiff in tort only for the defendant's own negligence. *See Transportation Ins. Co. v. Hunzinger Construction Co.*, 179 Wis. 2d 281, 293, 507 N.W.2d 136, 140 (Ct. App. 1993). One exception is under the doctrine of *respondeat superior*, where an employer will be vicariously liable for the negligence of an employee. *See Shannon v. City of Milwaukee*, 94 Wis. 2d 364, 370, 289 N.W.2d 564, 568 (1980). As noted, the trial court held that Dr. Seldera was vicariously liable for the negligence of the nurses. The Lewises' argument that we should affirm the trial court rests, in essence, on their reading of *Fehrman v. Smirl*, 25 Wis. 2d 645, 131 N.W.2d 314 (1964).

¶ 8. In *Fehrman*, the plaintiff's surgeon, Warren G. Smirl, M.D., "arranged to have" another surgeon, Timothy McDonnell, M.D., "participate in the treatment" of the plaintiff, and the plaintiff consented to have Dr. McDonnell operate on him, with Dr. Smirl acting "as his assistant." *Id.*, 25 Wis. 2d at 655, 131 N.W.2d at 319; *see also Fehrman v. Smirl*, 20 Wis. 2d 1, 121 N.W.2d 255 (1963).[3] There was evidence that the plaintiff was injured during the surgery by the acts of one or both of the surgeons. *Fehrman*, 25 Wis. 2d at 651, 131 N.W.2d at 317 (a medical expert testified: "this result would not have occurred if they, or either of

---

[3] In *Fehrman v. Smirl*, 20 Wis. 2d 1, 121 N.W.2d 255 (1963), Dr. McDonnell's name is spelled McDonell.

them, or both, had been exercising the proper skill and care and diligence that is expected of them in the performance of this operation"). During its deliberations, the jury asked the trial court whether Dr. Smirl was responsible for the care given to the plaintiff by Dr. McDonnell. The trial court responded:

> "You are instructed, Members of the Jury, that it was the duty of Dr. McDonnell to exercise the same degree of care and skill in his treatment and in his surgery upon Oscar Fehrman as was required of Dr. Smirl, and that Dr. Smirl would be responsible for any failure upon the part of Dr. McDonnell to exercise such care and skill."

*Id.*, 25 Wis. 2d at 654, 131 N.W.2d at 318.

¶ 9. After reviewing the law around the country concerning the "problem of holding one medical doctor liable for another's conduct," *id.*, 25 Wis. 2d at 655, 131 N.W.2d at 319, *Fehrman* concluded that, "under the circumstances of this case, Dr. Smirl either was in charge of the patient or was acting jointly with Dr. McDonnell," and, therefore, the trial court's instruction on vicarious liability "was proper." *Id.*, 25 Wis. 2d at 657, 131 N.W.2d at 319–320. The Lewises argue that this statement requires that Dr. Seldera be held liable for the negligence of the two nurses even though he was not, in any respect, negligent. In our view, this is, in the words of A.E. Housman, "a brook too broad for leaping." A SHROPSHIRE LAD canto 54.

¶ 10. As noted, *Fehrman* approved the trial court's additional instruction to the jury "under the circumstances of this case." *Fehrman*, 25 Wis. 2d at 657, 131 N.W.2d at 319–320. This is a significant limitation because, as we have seen, the most salient circumstance was that the plaintiff's injuries in *Fehr-*

*man* would not have occurred if neither Dr. Smirl nor Dr. McDonnell was negligent, even though specific acts of negligence by either could not be shown. Thus, and significantly, *Fehrman* also approved the trial court's *res ipsa loquitur* instruction because the medical expert's testimony did "not particularize the nature of the negligence which he had in mind." *Id.*, 25 Wis. 2d at 652, 131 N.W.2d at 317. Stated another way, the jury in *Fehrman* could have found that either or both of the surgeons were negligent, but there was no evidence pointing to one but not the other.

¶ 11. *Fehrman* is like the law-school classic, *Summers v. Tice*, 199 P.2d 1 (Cal. 1948), where two hunters simultaneously and negligently fired their shotguns towards the plaintiff who was struck by a pellet the origin of which could not be ascertained. *Id.*, 199 P.2d at 2. Under that circumstance, each hunter was held vicariously liable for the negligence of the other. *Id.*, 199 P.2d at 2–5.[4] Significantly, although *Summers* concerned a situation where both potentially

---

[4] *Summers v. Tice*, 199 P.2d 1 (Cal. 1948), was discussed in *Collins v. Eli Lilly Co.*, 116 Wis. 2d 166, 182–183, 342 N.W.2d 37, 45–46 (1984). *Collins* was an action brought by a woman who was injured as a consequence of her mother having taken diethylstilbestrol while pregnant but could not prove which of the many manufacturers who made the drug produced the pills that her mother took. *See id.*, 116 Wis. 2d at 174–177, 182, 342 N.W.2d at 41–43, 45. Although formulating a theory of recovery for plaintiffs in diethylstilbestrol cases (and cases presenting similar issues), *see id.*, 116 Wis. 2d at 190–194, 342 N.W.2d at 49–50, *Collins* rejected the *Summers* approach in the diethyl-stilbestrol-type case for a variety of reasons centering on the likelihood that not all potential tortfeasors could or would be joined in one action, as well as the unfairness that would result in holding all manufacturers of the drug equally liable irrespective of whether the manufacturer sold large or small quantities.

liable defendants were negligent, it relied on a medical-malpractice case where all persons who had any connection with an operation during which an unconscious patient was injured were liable to the patient unless they could prove that they were not negligent. *See id.*, 199 P.2d at 4 (analyzing *Ybarra v. Spangard*, 154 P.2d 687, 688–690 (Cal. 1944)). This was the situation in *Fehrman*—one or both of the surgeons were negligent but the plaintiff could not prove which one.[5] It is *not*

---

*Collins*, 116 Wis. 2d at 183–184, 342 N.W.2d at 46. None of these factors is present here.

[5] In the cases upon which *Fehrman v. Smirl*, 25 Wis. 2d 645, 654–656, 131 N.W.2d 314, 318–319 (1964), relied in approving the trial court's instruction to the jury that Dr. Smirl was responsible for Dr. McDonnell's negligence, if any, all the practitioners were either negligent or potentially so, or the practitioner was held liable under principles of *respondeat superior* because he employed the person who was negligent. *See Morrill v. Komasinski*, 256 Wis. 417, 426, 41 N.W.2d 620, 624 (1950) (evidence supported finding that physician did not exercise due care in treatment of his patient even though he called in a specialist); *Heimlich v. Harvey*, 255 Wis. 471, 474–475, 39 N.W.2d 394, 395 (1949) (*respondeat superior*); *Graddy v. New York Med. College*, 243 N.Y.S.2d 940, 945–946 (App. Div. 1963) (patient injured by administration of anesthesia; hospital anesthesiologists liable for negligence of anesthesiological resident under their supervision, even though the anesthesiologists did not control the specifics of the resident's administration of anesthesia to patient, but where they knew that patient had fifteen years earlier "experienced difficulty in taking anesthesia"; "suggestion in the record that [resident] was to some extent an employee" of the anesthesiologists); *Mutschman v. Petry*, 189 N.E. 658, 658–659 (Ohio App. 1933) (both physicians performing operation liable for failure to discover presence of tetanus infection); *Voter v. Newsalt*, 225 N.W. 74, 75 (N.D. 1929) (chiropractor liable for patient's injuries resulting from operation performed by surgeon in chiropractor's office, where evidence

the situation here, however, where as we have seen, the Lewises admit that Dr. Seldera was *not* negligent. Thus, *Fehrman*'s imposition of liability upon two surgeons, both of whom could have been causally negligent, is not applicable in this case.

supported finding that chiropractor assisted in operation and rendered post-operative care to patient); *Bolles v. Kinton*, 263 P. 26, 27 (Colo. 1928) (osteopaths who participated jointly in care and treatment of patient liable for injuries sustained as a consequence of the treatment); *Manley v. Coleman*, 19 Ohio App. 284, 286–291 (1924) (family physician assisting in operation jointly liable with surgeon when sponge was left in patient's abdomen; family physician admitted that he assisted in removing sponges); *cf. Mayer v. Hipke*, 183 Wis. 382, 197 N.W. 333 (1924) (physicians not liable where neither physician negligent; negligence by others during an operation at which they were not involved); *Brossard v. Koop*, 274 N.W. 241, 242–243 (Minn. 1937) (plaintiff's physician, who was not a surgeon but who administered ether during operation, not liable for negligence of the surgeons who left gauze pack in plaintiff's body, even though plaintiff's physician recommended the surgeons, and paid them from funds he collected from plaintiff); *Shannon v. Ramsey*, 193 N.E. 235, 238 (Mass. 1934) (plaintiff's physician not liable for "any act or omission" by specialist whom physician brought in to consult and assist in connection with plaintiff's treatment); *Beckwith v. Boynton*, 235 Ill. App. 469, 1924 WL 3713 at *8–10 (1924) (no joint liability among physicians sharing operation responsibilities; none of physicians negligent); *Robinson v. Crotwell*, 57 So. 23, 28 (Ala. 1911) (physician participating in operation by giving anesthetic not responsible for alleged negligence of surgeon); *Brown v. Bennett*, 122 N.W. 305, 306–307 (Mich. 1909) (surgical pad left in patient; patient's physician, who assisted the operating surgeon, not liable for the alleged negligence of surgeon even though patient's physician paid surgeon from money given to physician for that purpose by patient's family). None of the scenarios involved in the cases upon which *Fehrman* relied is present here.

¶ 12. The Lewises also offer, as an alternative basis to uphold the trial court's grant of summary judgment, the trial court's "captain of the ship" rationale, and cite *McConnell v. Williams*, 65 A.2d 243 (Pa. 1949), in support. In *McConnell*, a newborn baby's eyes were severely damaged when an intern improperly applied silver nitrate to them. *Id.*, 65 A.2d at 244. The physician delivering the baby had requested from the hospital that the intern, whom the physician selected by name, " 'be his assistant and take care of the baby at the time of the delivery.' " *Ibid.* In holding that it was a jury question as to whether the intern was acting as the physician's agent for purposes of imposing upon the physician liability for the intern's negligence, *McConnell* noted:

> As far as the evidence discloses it was defendant [physician], not the hospital, who assigned the interne [*sic*] to the task of inserting the silver nitrate solution into the infant's eyes, and, even if in the performance of that act he [the intern] may also have been serving the hospital, that fact would not change his legal status with respect to defendant, since a borrowed employee may, in the performance of a given act, be serving the interests of both his general employer and his temporary master.

*Id.*, 65 A.2d at 247; *see also id.* at 248 ("It is for the jury to determine whether the relationship between defendant and the interne [*sic*], at the time the child's eyes were injured, was that of master and servant. If such was the relationship, defendant is legally liable for the injury caused by the interne's [*sic*] alleged negligence."). As noted, the Lewises do not contend that the nurses here were Dr. Seldera's "borrowed servants."

■

¶ 13.    No appellate court in Wisconsin has used
the "captain of the ship" doctrine to impose liability in a
medical malpractice case, and the doctrine has gener-
ally lapsed into disuse elsewhere with the passage of
time. *See Tappe v. Iowa Methodist Med. Ctr.*, 477
N.W.2d 396, 402–403 (Iowa 1991). As explained by
*Truhitte v. French Hospital*, 180 Cal. Rptr. 152 (Cal.
App. 1982), after first recounting the history of the
doctrine, which in California apparently developed in
the 1930s (*see id.*, 180 Cal. Rptr. at 158–160):

> We question whether the "captain of the ship" doc-
> trine has any remaining independent existence: the
> vicarious liability of a surgeon for the independent
> negligence of nurses and other assistants is deter-
> mined in the cases under the general rules of
> agency. The "captain of the ship" doctrine arose
> from the need to assure plaintiffs a source of recov-
> ery for malpractice at a time when many hospitals
> enjoyed charitable immunity; other jurisdictions
> are moving away from a strict application of the
> doctrine. A theory that the surgeon directly controls
> all activities of whatever nature in the operating
> room certainly is not realistic in present day medi-
> cal care. Today's hospitals hire, fire, train and
> provide day-to-day supervision of their nurse-
> employees. Fortunately, hospitals can and do imple-
> ment standards and regulations governing good
> surgery practices and techniques and are in the best
> position to enforce compliance; hospitals also are in
> a position to insure against the risk and pass the
> cost to consumers.

*Id.*, 180 Cal. Rptr. at 160. Although *Truhitte* was criti-
cized by *Schultz v. Mutch*, 211 Cal. Rptr. 445, 450 (Cal.
App. 1985) ("We are unpersuaded by *Truhitte v. French
Hospital* (1982) 128 Cal. App. 3d 332, 344–349, 180

Cal. Rptr. 152, which expresses doubt as to the continued validity of the "Captain of the Ship" doctrine."), and the Lewises ask us to follow *Schultz*, that decision was disowned by the California Supreme Court when it ordered that it not be published. *See Schultz*, 211 Cal. Rptr. at 445 n* ("In denying hearing, the Supreme Court ordered that the opinion be not officially published.").

¶ 14.   Dr. Seldera was not negligent and did not employ—either directly or as "borrowed servants"—those who were. He is not vicariously liable for their negligence.

*By the Court.*—Judgment reversed.