PATRICK J. SHANNON *vs.* FRANK RAMSEY.

SAME *vs.* WILLIAM F. DOLAN.

Middlesex. February 5, 1934. — December 11, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Negligence,* Of physician. *Physician and Surgeon. Contract,* With physician. *Evidence,* Relevancy and materiality. *Witness,* Cross-examination. *Agency,* What constitutes.

At the trial of an action of tort against a physician and surgeon for alleged malpractice in treatment of a broken leg of the plaintiff, there was evidence that, three days after the leg was broken, a general practitioner asked the defendant to see a "broken leg case" which he had; that the defendant saw the plaintiff at his home once only and, in consultation with the general practitioner, diagnosed the case, gave advice, made an incomplete reduction and put on a plaster cast; that

he "looked at the leg and started putting the cast on, and that is all he did in the way of examining"; that such treatment was given without X-rays of the plaintiff's leg having been taken; that the cast was a temporary cast; that the defendant said that he would come the next day and bring a pair of crutches; and that the outcome of the case was unfavorable. There was no evidence that the treatment given by the defendant was more than temporary and in the nature of emergency treatment, or that any arrangement was made by the plaintiff or by the general practitioner for the defendant to continue to attend the plaintiff or to see him again, or that the examination of the plaintiff's leg made by the defendant was inadequate. The defendant testified, in cross-examination, "that this was no case to treat at home, that it was a case for hospitalization from the beginning to the end." The context in the record showed that such statement was not an expression of his opinion in respect to the temporary emergency treatment which he gave to the plaintiff. There was no evidence that the defendant was not justified in dealing with the general practitioner as the physician in charge of the case. A verdict was ordered for the defendant. *Held,* that

(1) The evidence did not warrant a finding of an implied general employment of the defendant to take charge of the case which would impose on him the duty to continue to attend the plaintiff;

(2) Because of the character of the services required of the defendant as a temporary consultant, a finding was not warranted that the defendant was negligent in treating the plaintiff at home, in failing to advise the plaintiff that hospitalization was necessary, in putting on a temporary cast without advising the plaintiff that it was only temporary and that a later reduction of the fracture would be necessary, in failing to have X-rays taken, or in failing to continue to attend the plaintiff after putting on the cast;

(3) Whether the examination of the plaintiff's leg made by the defendant was adequate or not was not a matter which the jury could determine on their own knowledge without evidence;

(4) No inference of lack of skill on the part of the defendant in giving the temporary treatment required of him could be drawn from the unfavorable outcome of the case;

(5) The verdict properly was ordered.

The defendant was called as a witness by the plaintiff at the trial above described and testified that he considered the case one of "First aid by me, as far as anything done on that fracture was concerned." He then was asked, "All right, sir. Always when you have a first aid, when you are called in as a consultant, even though a case has been in the hands of a doctor for months, you say then you are justified in not taking an X-ray because it is first aid by you; is that right?" Subject to exception by the plaintiff, the question was excluded. *Held,* that the exclusion was a proper exercise by the trial judge of discretion in the conduct of cross-examination of the defendant.

At the trial above described, evidence that the defendant told the general practitioner "to get the man in the hospital to get X-rays," the evidence being material to show the propriety of the defendant's conduct

with respect to advising the use of X-rays, was not objectionable as hearsay, and was material and admissible.

An exception to the admission of the material evidence above described was overruled, although the evidence was admitted on condition that further evidence be produced that the direction to procure X-rays was communicated to the plaintiff, and that no such evidence was produced, it appearing that no motion was made to strike out the evidence so admitted because of failure to comply with such condition.

Where an exception to the admission of certain evidence is overruled, exceptions to questions merely of a preliminary nature preceding it also must be overruled.

At the trial of an action against the general practitioner, tried with the action above described, there was no evidence that the selection of the consultant was improper or that the consultant in treating the plaintiff was the servant or agent of the general practitioner or acted under his direction or control, and it was *held,* that the general practitioner was not liable for any act or omission of the consultant in his treatment of the plaintiff.

At the trial of the action against the general practitioner above described, the following instructions to the jury were sufficiently favorable to the plaintiff: "Merely by virtue of the relationship of physician and patient the defendant was not under the duty to transport the plaintiff to an X-ray doctor. If he was not treating the plaintiff at all and gratuitously offered to give the plaintiff a ride to an X-ray doctor and failed to do it, the doctor would not be liable for injurious consequences coming from not having an X-ray taken. If the defendant was treating the plaintiff and as physician in charge of the case where X-rays were known to be necessary he undertook to accompany his patient to have an X-ray and undertook to transport the plaintiff there and then failed either to do it himself or to notify the patient that the responsibility of getting transportation and going was on him, the responsibility for not having an X-ray would be on the physician."

Two ACTIONS OF TORT. Writs dated February 14, 1928.

In the Superior Court, the actions were tried together before *C. H. Donahue,* J.

The defendant Dolan was called as a witness by the plaintiff. He testified that he considered the case one of "First aid by me, as far as anything done on that fracture was concerned." He then was asked, "All right, sir. Always when you have a first aid, when you are called in as a consultant, even though a case has been in the hands of a doctor for months, you say then you are justified in not taking an X-ray because it is first aid by you; is that right?" On objection by his counsel, the question was excluded, subject to an exception by the plaintiff.

Other material evidence, and rulings by the trial judge, are described in the opinion.

The judge ordered a verdict for the defendant Dolan. The jury found for the defendant Ramsey. The plaintiff alleged exceptions which, after the qualification of *C. H. Donahue,* J., as a justice of this court, were allowed by *J. J. Burns,* J.

*M. Michelson,* for the plaintiff.

*J. N. Clark,* for the defendant Dolan.

*H. M. Leen,* for the defendant Ramsey.

FIELD, J. These two actions of tort, each against a physician for malpractice in treating the plaintiff's broken leg, were tried together. The jury returned a verdict for the defendant Ramsey and, by direction of the judge, a verdict for the defendant Dolan. The cases come before us on the plaintiff's exceptions to the direction of a verdict for the defendant Dolan, to the exclusion and admission of evidence and to the charge of the judge in the action against the defendant Ramsey.

There was evidence of the following facts: The plaintiff's leg was broken August 30, 1926. Two days later Dr. Ramsey, a general practitioner, came to the plaintiff's home, put the plaintiff's leg in the fold of a pillow, tied it with a clothes line, and said that he could not set the leg but would be back the next day with another doctor. The next day he returned with Dr. Dolan, a specialist in surgery, who, with Dr. Ramsey's assistance, put the leg in a cast. Dr. Dolan did not see nor talk with the plaintiff or his wife again. The evidence was conflicting as to whether the defendant Ramsey was treating or purporting to treat the plaintiff except as above stated. But it could have been found that he saw the plaintiff at his home about twice a day for two or three weeks and once a day for two weeks, being paid each time for his visit, and then stopped coming to see the plaintiff. Another physician saw the plaintiff October 29 when the cast was still on the leg. An X-ray photograph was made October 30. None had been made before. The plaintiff was admitted to a hospital November 2. The outcome of the case was unfavorable.

1. The verdict for the defendant Dolan was directed rightly.

The plaintiff contends that the jury could have found this defendant negligent in (a) failing "to use proper skill in performing the operation," (b) "treating the plaintiff at home," (c) failing "to advise the plaintiff that hospitalization was necessary," (d) "putting on a temporary cast without advising the plaintiff that it was only temporary and that a later reduction of the fracture would be necessary," (e) "failing to have X-rays taken," and (f) "failing to continue to attend the plaintiff after putting on the cast." The evidence, however, did not warrant a finding of negligence or other malpractice.

The duty of this defendant to the plaintiff was determined by the nature of his employment by the plaintiff, particularly whether it was a general employment to take charge of the case or an employment only for the specific occasion when he went to the plaintiff's home. There was no evidence of employment in express terms, and the nature of the employment must be implied from the circumstances. There was evidence that this defendant was asked by Dr. Ramsey to see a "broken leg case" which he had as a general practitioner, and that this defendant saw the plaintiff at his home, once only, in consultation with Dr. Ramsey, diagnosed the case, gave advice, made an incomplete reduction and put a temporary plaster cast on the plaintiff's leg to prevent it from getting worse. The plaintiff testified, without contradiction, to a conversation in his presence between this defendant and Dr. Ramsey tending to show that as between Dr. Ramsey and this defendant the former was then in charge of the case and the latter a consultant. There was no evidence that the treatment given by this defendant was more than temporary and in the nature of an emergency treatment, or that any arrangement was made by the plaintiff or Dr. Ramsey for this defendant to continue to attend the plaintiff or to see him again — except as the plaintiff testified that this defendant said that he would come the next day and bring a pair of crutches — or to take over the charge of the case from Dr. Ramsey. This

evidence, with other evidence not recited, did not warrant the finding of an implied general employment of this defendant to take charge of the case which would impose on him the duty to continue to attend the plaintiff. See *Nelson* v. *Farrish*, 143 Minn. 368, 371–372. See also *Cross* v. *Albee*, 250 Mass. 170, 175.

It follows from what has been said that the liability of this defendant, if any, must be based on his conduct on the one occasion when he attended the plaintiff and the necessary incidents thereof. There was no evidence that this defendant did not have proper professional skill or use such skill on this occasion unless in the specific respects relied on by the plaintiff and hereinafter considered. No inference to the contrary can be drawn from the plaintiff's testimony that the defendant "looked at the leg and started putting the cast on and that is all he did in the way of examining." There was no evidence of inadequacy of such an examination and the matter was not within the field of common knowledge possessed by the jury. Nor could an inference of lack of, or failure to use, proper skill be drawn from the unfavorable outcome of the case. *Semerjian* v. *Stetson*, 284 Mass. 510, 514.

There was no evidence that this defendant was negligent in "treating the plaintiff at home." It is true that this defendant, on cross-examination by plaintiff's counsel, testified "that this was no case to treat at home, that it was a case for hospitalization from the beginning to the end," but it is obvious in the light of the witness's other testimony that this statement was not an expression of his opinion in respect to the temporary emergency treatment which he gave the plaintiff. *Kettleman* v. *Atkins*, 229 Mass. 89, 91. See *Lowell* v. *Boston Storage Warehouse Co.* 280 Mass. 234, 237. And the somewhat similar testimony of Dr. Ramsey goes no further. Furthermore there was no evidence that this defendant did not use proper skill because he gave such temporary treatment without an X-ray photograph. Such evidence as was introduced was to the contrary, though there was evidence of the necessity of an X-ray photograph in the treatment of a broken leg. The

other contentions of the plaintiff bear upon the treatment of the case after the temporary treatment. There was no evidence that this defendant was responsible for such later treatment except as his being called in consultation by the physician in charge of the case and his giving temporary treatment imposed upon him the duty to advise with respect to future treatment. And, whatever was the actual connection of Dr. Ramsey with the case, there was no evidence that this defendant was not justified in dealing with him as the physician in charge. Consequently it could not have been found that this defendant failed to use proper skill because he did not advise the plaintiff that the cast "was only temporary and that a later reduction of the fracture would be necessary." The jury could not have found, in the absence, as here, of evidence on the subject, that the consulting surgeon, in the exercise of proper skill, could not reasonably rely on those facts being known to the physician in charge, present when the temporary treatment was given, without his being told them, and on such knowledge being adequate notice to the plaintiff of the future requirements of the case. Similarly it could not have been found that this defendant failed to use proper skill in failing to advise that an X-ray photograph be made and that the plaintiff be treated in a hospital, for there is no evidence that this defendant did not seasonably advise Dr. Ramsey to this effect, and, moreover, the plaintiff's testimony, in this respect uncontradicted, shows that he knew that both this defendant and Dr. Ramsey contemplated that an X-ray photograph should be made. And the testimony of the plaintiff's wife that this defendant told her that she could take care of her husband at home so far as appears does not relate to more than temporary care.

2. There was no error in the exclusion or admission of evidence.

The exclusion, subject to the plaintiff's exception, of a question asked the defendant Dolan on cross-examination was within the discretion of the judge. *Commonwealth* v. *Bosworth,* 257 Mass. 212, 214. And the admission of testimony of this witness, also subject to the plaintiff's exception,

that he told Dr. Ramsey "to get the man in the hospital to get X-rays" was not error. This testimony was material as tending to show the conduct of Dr. Dolan in connection with the treatment of the plaintiff and was not objectionable as hearsay. That this testimony was admitted on condition that evidence be produced that the message was conveyed to the plaintiff and no such evidence was produced is now unimportant since the plaintiff made no motion to strike out the testimony. *Alden Bros. Co.* v. *Dunn,* 264 Mass. 355, 362, and cases cited. And it is unnecessary to consider whether such condition was properly imposed. Since this testimony was admissible, preliminary testimony leading up to it to which exception was taken, was also admissible.

3. There was no error in the judge's charge in the action against the defendant Ramsey.

The plaintiff argues only his exceptions to the giving of three instructions requested by the defendant Ramsey. The instructions requested were not given in terms but we treat the plaintiff's exceptions as bringing before us the question of the general correctness of the charge on the matters referred to in these requests. *Galligan* v. *Old Colony Street Railway,* 182 Mass. 211, 213–214.

The judge after instructing the jury that there was no dispute here "that in the treatment of a broken leg the taking of X-rays in the present state of the medical science is an essential thing," and also instructing them in regard to the effect of a refusal of the plaintiff to have X-rays taken, following closely the law as stated in *Carey* v. *Mercer,* 239 Mass. 599, gave the following instructions on the matters referred to in this defendant's. requests: On the matter referred to in request numbered 1, which dealt with this defendant's responsibility for the conduct of Dr. Dolan, "There is no evidence here that anything happened at the time Dr. Dolan was there [at the plaintiff's home] for which the defendant Dr. Ramsey would be liable." And on the matters referred to in requests numbered 2 and 3, "Merely by virtue of the relationship of physician and patient the defendant was not under the duty to transport the plaintiff

to an X-ray doctor. If he was not treating the plaintiff at all and gratuitously offered to give the plaintiff a ride to an X-ray doctor and failed to do it, the doctor would not be liable for injurious consequences coming from not having an X-ray taken. If the defendant was treating the plaintiff and as physician in charge of the case where X-rays were known to be necessary he undertook to accompany his patient to have an X-ray and undertook to transport the plaintiff there and then failed either to do it himself or to notify the patient that the responsibility of getting transportation and going was on him, the responsibility for not having an X-ray would be on the physician."

The charge in regard to Dr. Ramsey's liability for the conduct of Dr. Dolan at the plaintiff's home was correct. On the evidence most favorable to the plaintiff the defendant Ramsey was the physician in charge of the case and the defendant Dolan a surgeon selected by him. There is, however, no evidence that the selection of Dr. Dolan was improper, or that Dr. Dolan in treating the plaintiff was the agent or servant of Dr. Ramsey or acted under his direction or control. In these circumstances Dr. Ramsey was not liable for any act or omission of Dr. Dolan in his treatment of the plaintiff. *Nelson* v. *Sandell,* 202 Iowa, 109. *Brown* v. *Bennett,* 157 Mich. 654. *Mayer* v. *Hipke,* 183 Wis. 382.

The charge on the matter of X-rays referred to in requests numbered 2 and 3 was sufficiently favorable to the plaintiff. It was not a part of the ordinary duty of this defendant as a physician "to transport the plaintiff to an X-ray doctor." And if he undertook to do so as an incident of his treatment of the plaintiff he did not fail in his duty as a physician if he withdrew from his undertaking after giving reasonable notice of withdrawal, even if he did not wholly withdraw from the case. There is no evidence of any special contract to transport the plaintiff which imposed upon this defendant any greater duty to transport the plaintiff than was described in the charge. Furthermore, if the failure to have an X-ray photograph made was due to the plaintiff's conduct after he had been advised

of the necessity therefor it was not malpractice for this defendant to continue to treat the plaintiff without such a photograph. See *Carey* v. *Mercer*, 239 Mass. 599. In each case the entry may be

*Exceptions overruled.*