OPINION OF THE COURT
James C. Tormey, J.
Defendants present a motion for partial summary judgment *393 based upon the expiration of the Statute of Limitations for any medical treatment provided by the defendant preceding 2V2 years from the filing of the complaint. The plaintiff states that all medical care and treatment provided by the defendants from late 1992 through January 16, 1996 is appropriately before the court on the basis of continuous treatment by the defendant. The court notes at the onset that once the defendant makes a bona fide showing of an entitlement to the defense of Statute of Limitations, the burden of persuasion to prove the applicability of continuous treatment exception is upon the plaintiff (Polizzano v Weiner, 179 AD2d 803 [2d Dept 1992]).
The definition of continuous medical treatment has been a recurring subject of review for the courts. Accordingly, considerable thought has been expended to formulate a definition. In Massie v Crawford (78 NY2d 516 [1991]), it was determined that a plan of continuing corrective treatment or procedures must be contemplated. Therein, the Court of Appeals held (at 519-520): “ ‘continuous treatment’ involves more than a physician-patient relationship. [Citations omitted.] There must be ongoing treatment of a medical condition. The doctrine rests on the premise that the trust and confidence that marks such relationships puts the patient at a disadvantage in questioning the doctor’s skill because to sue while undergoing treatment necessarily interrupts the course of treatment. ‘It would be absurd’, we stated, ‘to require a wronged patient to interrupt corrective efforts by serving a summons on the physician’ under those circumstances [citation omitted]. A patient is not entitled to the benefit of the toll in the absence of continuing efforts by a doctor to treat a particular condition because the policy reasons underlying the continuous treatment doctrine do not justify the patient’s delay in bringing suit in such circumstances [citations omitted]. Thus, we have emphasized that continuous treatment ‘does not contemplate circumstances where a patient initiates return visits merely to have * * * her condition checked’ [citation omitted]. Routine examinations of a patient who appears to be in good health or diagnostic examinations, even when conducted repeatedly over a period of time, are not ‘a course of treatment’ [citations omitted].”
In other words, “a patient is not entitled to the benefit of the toll unless there has been a course of treatment established with respect to the condition that gives rise to the lawsuit” *394 (Patterson v Minehan, 180 AD2d 241, 242-243 [3d Dept 1992]; see also, Holmes v Weissman, 217 AD2d 924 [4th Dept 1995]; Fisher v Felix, 201 AD2d 453 [2d Dept 1994]). Essentially, there must be a constant effort to combat the same illness (Roberts v City of New York, 188 AD2d 337 [1st Dept 1992]; Cizek v Bassett Hosp., 176 AD2d 1035, 1037 [3d Dept 1991]) which said effort may be, in part, “manifested in the form of a regularly scheduled appointment for the near future, agreed upon during that last visit, in conformance with the periodic appointments which characterized the treatment in the immediate past” (Richardson v Orentreich, 64 NY2d 896, 898-899 [1985]).
Dr. Cupelo recites that in March 1993 he was concerned and sent his patient to Dr. Metzger, an ear, nose and throat specialist. After examination, Dr. Metzger wrote to Dr. Cupelo on April 20, 1993, that the examination was normal and no evidence of disease was found. Dr. Cupelo states in his affidavit (UTf 7-13) the following facts concerning his involvement with this patient after March 5, 1993:
“I did not see or hear from the patient again until an office call of November 1, 1993 at which time my impression of the symptoms complained of at that time was that he had acute prostatitis. It was my habit to list and comment upon any physical complaints mentioned by my patients. There is nothing in my notes documenting that he complained of a problem with his right neck at that time, nor do I recall such complaint then being made. In any event, I did not examine or treat him for any condition of his right neck. I did give him a prescription for a medication to treat his prostatitis, a condition which he experienced from time to time over the years.
“I had a telephone conversation with Mr. Schleicher on November 29, 1993, at which time he complained of recurrence of his prostatitis symptoms, and I renewed a prescription for appropriate medication. I have no recollection of any reported complaints at that time regarding his right neck and my office notes do not reflect any such complaints.
“The next office visit of the patient was on November 28, 1994, and that visit, as indicated by my notes, concerned the prostatitis for which I had referred him to Dr. Birnbaum in the past, and for which I occasionally gave him medication. No complaints regarding the neck were mentioned or discussed.
“There were various telephone calls from the patient in 1995 namely on August 11th, 31st and September 1st, but none of these related to the neck complaints.
*395 “The patient was seen in the office on September 11, 1995, when he presented with a small fullness on the right side of his neck and reported at the time some occasional discomfort on the right side, of his neck. This was the first occasion when I had seen the patient in my office since November 28, 1994, when I examined and treated him for his prostatitis, and the first time there had been any reference to or complaints of the right neck since our telephone conversation of March 5, 1993 when I referred him to Dr. Metzger for evaluation. At the time of this office visit of September, 1995, the subcutaneous tissues of the right neck felt slightly firmer than the left side, but there was not any discrete mass or node. I did not recommend any treatment for his neck on that occasion.
“At an office call of November 20, 1995, the patient had bilateral upper anterior cervical lymphadenopathy, but his throat appeared to be normal and his ears were normal. The patient was told on this occasion that if his glands did not completely go to normal, I would want to examine him again.
“On January 16, 1996, following a discussion with Dr. Frank Ryan, an oral surgeon, and a CT scan of the neck, which was abnormal, I called in the patient and found two firm, rubbery lymph nodes on the anterior portion of the right and a smaller one on the left neck. I arranged for screening blood work and referred the patient to Dr. Daniel Rabuzzi, an ear, nose and throat consultant, who performed a diagnostic procedure and discovered a mass lesion at the base of the tongue which turned out to be squamous cell carcinoma. Treatment of the patient thereafter was by others.”
Disagreeing with the doctor’s account of the facts, the plaintiff highlights that he made various complaints or comments as to the condition of his neck and ear to Dr. Cupelo between March 1993 and January 1996.
Assuming that the plaintiffs factual version is correct, the important element in this analysis is what was the treatment modality that the plaintiff asserts for the time period in question. Plaintiff refers to Dr. Metzger’s letter from April 20, 1993. Therein, the plaintiff highlights the phrase “if it worsens or changes in any way, I would like to see him back.” (Plaintiffs exhibit A.) As set forth in plaintiffs memorandum of law, “at that point in time (April 1993) the recommended treatment for Mr. Schleicher’s right ear and right sided neck symptoms was observation and monitoring for any changes or worsening of those symptoms.”
Based upon the above facts, this court finds that there was no continuing course of treatment of the condition complained *396 of by the plaintiff. None of the criteria necessary to legally demonstrate that the defendant continued to treat the plaintiff for his neck and ear after March 1993 is presented herein. There was no regularly scheduled appointment after March 1993 for said ailment (Richardson v Orentreich, supra) and there was no indicated medical treatment or corrective efforts initiated by the physician for this affliction until 1995 (Massie v Crawford, 78 NY2d 516, supra).
The thrust of this action is closely akin to the issues presented in Nykorchuck v Henriques (78 NY2d 255 [1991]) declaring that continuous treatment does not encompass the failure to treat. (See also, Williams v Aziz, Sup Ct, Onondaga County, Feb. 3, 1997, Tormey, III, J., index No. 99-3505, affd 251 AD2d 1061 [4th Dept 1998].) In Williams, when the plaintiff saw the doctor no corrective efforts were prescribed. The doctor made a determination that she was in remission and she should return if her condition deteriorated. At that time, no additional medical intervention or procedures were prescribed. The plan of Dr. Aziz to “return for follow-up as needed” mirrored the nebulous medical plans of “ ‘we will have to keep an eye on it’ ” (Nykorchuck v Henriques, supra, at 258) or “ ‘[she] should return to [him] periodically for routine gynecologic examinations’ ” (Massie v Crawford, supra, at 518). Each of these medical plans standing alone, without any additional corrective efforts on the physician’s part, have been determined to be legally insufficient to be considered as indicia of continuous medical treatment. Rather, the Court declared that “The gravamen of plaintiff’s claim is not that the doctor performed certain negligent acts or omissions during the course of treatment * * * but rather that the doctor was negligent in failing to establish a course of treatment at all. While the failure to treat a condition may well be negligent, we cannot accept the self-contradictory proposition that the failure to establish a course of treatment is a course of treatment.” (Nykorchuck v Henriques, supra, at 259.) The continuous treatment exception, where no apparent treatment is prescribed and only monitoring is contemplated, would not extend the Statute of Limitations. Likewise, in Mr. Schleicher’s case, Dr. Cupelo intended to simply monitor the condition and refer as necessary. Nowhere does the plaintiff set forth any treatment provided by Dr. Cupelo other than to monitor, “keep an eye on,” or to refer, if the condition changes. This does not constitute continuous treatment.
Defendants’ motion for partial summary judgment is granted. Any course of conduct of the defendants which is in question as *397 a result of this action must have occurred within 21/2 years from the commencement of this lawsuit, otherwise those activities fall outside the applicable Statute of Limitations.