MATTHEW HARLFINGER & others[1] *vs.* HOWARD MARTIN.

Suffolk. March 12, 2001. - September 5, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Medical Malpractice,* Statute of limitations, Standard of care. *Limitations, Statute of. Negligence,* Medical malpractice. *Minor,* Medical treatment. *Repose, Statute of. Due Process of Law,* Statute of repose. *Constitutional Law,* Equal protection of laws.

Discussion of the statute of repose imposed on medical malpractice claims by the Legislature in response to this court's decision in *Franklin* v. *Albert,* 381 Mass. 611 (1980). [40-42]

This court concluded that G. L. c. 231, § 60D, requiring that medical malpractice claims on behalf of minors be brought within seven years of the date of the act or omission that allegedly caused the injury, did not violate due process [42-47] or equal protection [47-48] guarantees, where the statute of repose bore a reasonable relationship to the legitimate legislative purpose of curbing the cost of medical malpractice insurance [48-50].

This court declined to accept the contention that the defendant in this medical malpractice case was under a continuing duty, in the circumstances, to treat the minor plaintiff, such that an action alleging breach of that duty was still timely, notwithstanding the passage of more than seven years since the minor was actually treated by the defendant. [50-53]

CIVIL ACTION commenced in the Superior Court Department on April 29, 1997.

The case was heard by *Patrick J. King,* J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Keith S. Halpern* for the plaintiffs.

*Joseph L. Doherty, Jr.,* for the defendant.

The following submitted briefs for amici curiae:

*Vanessa Susan O'Rourke von Struensee* for Children's Watch.

*Thomas R. Kiley, Carl Valvo, & Gregory S. Gilman* for Professional Liability Foundation.

[1]His parents, Marlee Harlfinger and Robert Harlfinger.

SOSMAN, J. At issue in the present appeal is the constitutionality of G. L. c. 231, § 60D, which requires that medical malpractice claims on behalf of minors be brought within seven years of the date of the act or omission that allegedly caused the injury. The plaintiffs contend that this statute of repose violates the due process and equal protection guarantees of the Federal and State Constitutions. In the alternative, they argue that the defendant was under a continuing duty to treat the minor plaintiff, such that the action alleging a breach of that duty is still timely, notwithstanding the passage of more than seven years since the minor was actually treated by the defendant. A judge in the Superior Court granted the defendant's motion for summary judgment, upholding the constitutionality of the statute and rejecting the plaintiffs' theory of a continuing duty. The plaintiffs appealed, and we granted their application for direct appellate review. We find that G. L. c. 231, § 60D, does not violate due process or equal protection guarantees, and that the plaintiffs' continuing duty theory is unavailing on the facts of this case. We therefore affirm the judgment.

1. *Facts.* We review the facts in the light most favorable to the plaintiffs. On June 26, 1989, four year old Matthew Harlfinger fell and fractured his elbow. An open reduction and pin fixation was performed three days later by a physician other than the defendant.

The defendant first saw Matthew on August 6, 1989, when he was admitted to Brockton Hospital with a pin track infection. The defendant operated on Matthew to remove the pins at the site of the infection, and discharged him from the hospital ten days later. According to Matthew's mother, the defendant told her that he "would be responsible for treating Matthew after his discharge from the hospital and would provide all necessary follow-up care until Matthew was fully healed and recovered."

Subsequent to Matthew's discharge from the hospital, the defendant saw Matthew four times in his office, the last such office visit occurring on September 26, 1989. At that final visit, Matthew's mother expressed concern that her son's elbow still looked abnormal. The defendant assured her that Matthew's elbow "was fine and there was nothing to worry about," explaining that it might be years before the elbow looked normal again.

The defendant prescribed a course of physical therapy, and told Matthew's mother that he "would continue to monitor Matthew's rehabilitation and therapy until Matthew was fully recovered."

The defendant did not see Matthew after the September 26, 1989, office visit. Matthew did see a physical therapist, who was located in the same office as the defendant, three times a week for the next several months. The last such physical therapy session occurred sometime in January, 1990.

Thereafter, Matthew's elbow still looked abnormal, but the boy used the arm without any restrictions or complaints of pain. However, in 1996, Matthew began to complain of occasional pain while playing sports. His parents took him to see Dr. Alan Gray, an orthopedic surgeon, sometime in July, 1996. Dr. Gray determined that Matthew's elbow fracture had never healed. On August 22, 1996, Dr. Gray performed internal fixation and bone grafting to achieve bony union of the fracture. Dr. Gray is of the opinion that the defendant should have taken follow-up X-rays of Matthew's elbow, that X-rays would have revealed the nonunion of the fracture, and that earlier surgical intervention would have achieved a better result for Matthew (in terms of both function and appearance of his arm).

The plaintiffs filed their medical malpractice action against the defendant on April 29, 1997. Relying on G. L. c. 231, § 60D, a judge in the Superior Court held that the seven-year statute of repose barred the plaintiffs' claim. The present appeal followed.

2. *G. L. c. 231, § 60D.* Medical malpractice claims by minors are subject to both a statute of limitations (three years from the date the cause of action accrues, or until age nine years for minors who are less than six years of age at the time the cause of action accrues) and a statute of repose (seven years from the date of the act or omission that caused the injury). G. L. c. 231, § 60D.[2] "A statute of limitations normally governs the time within which legal proceedings must be commenced after the

---

[2]The statute reads as follows: "Notwithstanding the provisions of [G. L. c. 260, § 7], any claim by a minor against a health care provider stemming from professional services or health care rendered, whether in contract or tort, based on an alleged act, omission or neglect shall be commenced within three

cause of action accrues. . . . A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred, much less have been discovered." (Citation omitted.) *Klein* v. *Catalano*, 386 Mass. 701, 702 (1982).[3]

The statute of repose was first added to G. L. c. 231, § 60D, in 1986.[4] St. 1986, c. 351, § 23. Previously, § 60D had contained only the three-year statute of limitations, which applied to minors' claims notwithstanding the tolling provisions of G. L. c. 260, § 7.[5]

The imposition of a statute of repose on medical malpractice claims was in apparent response to this court's decision in *Franklin* v. *Albert*, 381 Mass. 611 (1980), in which we an-

---

years from the date the cause of action accrues, except that a minor under the full age of six years shall have until his ninth birthday in which the action may be commenced, but in no event shall any such action be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based except where the action is based upon the leaving of a foreign object in the body." G. L. c. 231, § 60D.

[3]The plaintiffs did bring this action within the statute of limitations set forth in G. L. c. 231, § 60D. A cause of action for medical malpractice does not accrue until the patient learns, or reasonably should have learned, that he has been harmed as a result of his physician's conduct. *McGuinness* v. *Cotter*, 412 Mass. 617, 627-628 (1992). *Franklin* v. *Albert*, 381 Mass. 611, 612 (1980). Here, the plaintiffs' cause of action did not accrue until the summer of 1996, when they first learned from Dr. Gray that Matthew's arm had not healed, and thus the statute of limitations set forth in § 60D would not have run on Matthew's claim until the summer of 1999. It is only the seven-year statute of repose that now bars the plaintiffs' claim.

Although not dispositive of the issues raised in this appeal, we note that, at the time the plaintiffs' claim for medical malpractice accrued in the summer of 1996, the seven-year statute of repose had not yet expired and a timely action could still have been commenced. However, by the time the suit was actually filed in April, 1997, the statute of repose did operate as a bar.

[4]The same legislation added a seven-year statute of repose to G. L. c. 260, § 4, covering medical malpractice claims by adult plaintiffs. St. 1986, c. 351, § 30.

[5]The tolling provisions for claims by minors, G. L. c. 260, § 7, tolls the statute of limitations until such time as "the disability is removed." Until 1976, those tolling provisions applied to minors' claims for medical malpractice. Medical malpractice claims were first excluded from those tolling provisions when G. L. c. 231, § 60D, was enacted. St. 1975, c. 362, § 5. See *Cioffi* v. *Guenther*, 374 Mass. 1 (1977).

nounced that the discovery rule would govern the accrual of a cause of action for medical malpractice.[6] A special commission reviewing issues pertaining to medical malpractice insurance, which had been established by the Legislature back in 1975 (St. 1975, c. 362, § 12), then recommended that an "outside limit" be placed on the time in which malpractice actions could be brought, because, under the discovery rule, "there is no limit on the time period in which such discovery must be made." Annual Report of the Special Commission Relative to Medical Professional Liability Insurance and the Nature and Consequences of Medical Malpractice, 1987 House Doc. No. 5262, at 9. The Legislature then adopted a seven-year statute of repose, applicable to medical malpractice claims by both children and adults, except in cases where the malpractice consisted of leaving a foreign object in the patient's body. St. 1986, c. 351, § 23 (amending G. L. c. 231, § 60D) and § 30 (amending G. L. c. 260, § 4).

3. *Due process.* The plaintiffs claim that the statute of repose in G. L. c. 231, § 60D, violates the due process guarantees of both the Federal Constitution and the Massachusetts Declaration of Rights.[7] A due process challenge to this statute was rejected by the Appeals Court in *Plummer* v. *Gillieson*, 44 Mass. App. Ct. 578, 582-583 (1998). We agree with the Appeals Court that the statute of repose bears a reasonable relationship to a legitimate legislative purpose, and that it therefore survives a challenge on due process grounds. *Id.* at 583.

Due process requires only that the statute "bear[] a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare." *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379

---

[6]Until our decision in *Franklin* v. *Albert, supra,* we had held that a medical malpractice action accrued at the time the malpractice was committed and had rejected the application of the discovery rule. See *Pasquale* v. *Chandler,* 350 Mass. 450, 458 (1966); *Capucci* v. *Barone,* 266 Mass. 578, 581 (1929).

[7]In their appellate brief, the plaintiffs merely claim a violation of "due process." In their opposition to the defendant's motion for summary judgment, the plaintiffs specified that they were relying on both the State and Federal Constitutions. The selection of the source of due process guarantees does not affect our analysis. "In the area of economic regulation, there is little difference between the State and Federal due process standards." *Klein* v. *Catalano,* 386 Mass. 701, 707 n.6 (1982).

Mass. 368, 373 (1979), quoting *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life*, 307 Mass. 408, 418 (1940). Where challenged economic legislation does not infringe on any fundamental right, we look only to see whether the legislation "has a permissible legislative objective" and whether the legislation "bears a rational relation to that objective." *Klein* v. *Catalano, supra* at 707. The test does not become more stringent merely because the economic legislation in question has the effect of abolishing a cause of action. "[W]e see no basis for treating a law that abrogates a tort remedy differently from any other law that regulates economic activity." *Id.* at 712 (upholding six-year statute of repose for tort claims involving design and construction work, applying rational relationship analysis rather than compelling State interest analysis).

The statute of repose at issue here was passed as part of a larger, long-term effort to curb the cost of medical malpractice insurance and keep such insurance available and affordable. See Annual Report of the Special Commission Relative to Medical Professional Liability Insurance and the Nature and Consequences of Medical Malpractice, 1978 House Doc. No. 5631; Annual Report of the Special Commission Relative to Medical Professional Liability Insurance and the Nature and Consequences of Medical Malpractice, 1987 House Doc. No. 5262. These are surely permissible objectives, and providing a definitive endpoint beyond which medical malpractice claims cannot be brought bears a rational relation to those objectives.[8]

The plaintiffs contend that this rationale does not suffice

---

[8]While the Legislature's immediate focus was on the cost and availability of medical malpractice insurance, we note that "[l]imiting the duration of liability is a well recognized public purpose." *Klein* v. *Catalano, supra* at 709. "There comes a time when [a defendant] ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be called on to resist a claim 'when evidence has been lost, memories have faded, and witnesses have disappeared.' " *Id.*, quoting *Rosenberg* v. *North Bergen*, 61 N.J. 190, 201 (1972). The problem of defending stale medical malpractice claims is further exacerbated by the fact that the standard of care is itself subject to rapid and dramatic change, fueled by advances in medical science and technology. From a defendant's perspective, demonstrating the standard of care of many years past, and that the defendant's treatment of the plaintiff did not deviate from it, can be very difficult when, by modern standards, the same care would represent a major deviation.

because "the malpractice insurance crisis was illusory" and, in any event, the statute of repose has only a "negligible impact" on the cost of health care.[9] We do not, under the guise of a due process analysis, independently determine the extent of the problem that the Legislature intended to address by economic legislation. Nor do we calculate the precise dollars saved by a particular enactment. The rational relationship test does not require that a statute pass a court-conducted retrospective cost-benefit analysis. "Whether [the statute is] wise or effective is not, of course, the province of [courts]." *Klein* v. *Catalano, supra* at 707, quoting *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 505 (1982). Rather, to whatever extent a statute has not proved effective, or to the extent that the problem it was intended to address later appears less pressing, the resort is to the Legislature to repeal or modify that legislation in light of new facts and circumstances.

Here, the Legislature was convinced that the availability of medical malpractice insurance at affordable premiums was at risk.[10] Actuarial experts testified that "meaningful savings would be realized" by amending the statute of limitations, which at that time left insurers and health care providers with no outer limit to later discovered but stale claims. Annual Report of the Special Commission Relative to Medical Professional Liability Insurance and the Nature and Consequences of Medical Malpractice, 1987 House Doc. No. 5262, at 9. If, as the plaintiffs contend, the Legislature overreacted to the perceived danger, or

[9]The plaintiffs also argue that the passage of medical malpractice reforms was due to "intense lobbying by insurance groups." The argument is not germane to our due process analysis. "[A]s long as a law is reasonably related to a permissible legislative objective, it is valid. It is not relevant that the. law is the product of lobbying by special interests, such as an industry or profession." *Klein* v. *Catalano, supra* at 709 n.9.

[10]As the special commission noted, a major medical malpractice insurer had announced its intention to cease writing such insurance in the Commonwealth back in 1975. Annual Report of the Special Commission Relative to Medical Professional Liability Insurance and the Nature and Consequences of Medical Malpractice, 1978 House Doc. No. 5631, at 7. By 1987, the special commission noted that, following significant reforms in the area of medical malpractice, insurance was available but that providers still faced the "problem of extraordinary premium increases." Annual Report of the Special Commission Relative to Medical Professional Liability Insurance and the Nature and Consequences of Medical Malpractice, 1987 House Doc. No. 5262, at 6.

if, as the plaintiffs argue, the costs of minors' claims brought after seven years are too minimal to have a real impact on insurers,[11] the plaintiffs must address their arguments to the Legislature.

The plaintiffs argue that other courts have relied on due process grounds to strike down statutes strictly limiting the time in which medical malpractice actions may be brought on behalf of minors. See *Barrio* v. *San Manuel Div. Hosp. for Magma Copper Co.*, 143 Ariz. 101, 107 (1984) (statute requiring minor injured under age of seven years to bring action before reaching age ten held unconstitutional); *Strahler* v. *St. Luke's Hosp.*, 706 S.W.2d 7, 8, 11-12 (Mo. 1986) (two-year statute of repose held unconstitutional); *Mominee* v. *Scherbarth*, 28 Ohio. St. 3d 270, 273, 277 (1986) (four-year statute of repose for minors' claims violated due process); *Sax* v. *Votteler*, 648 S.W.2d 661, 663, 665-667 (Tex. 1983) (two-year statute of repose unconstitutional). However, several of those cases were decided using a heightened level of scrutiny based on specific State constitutional guarantees,[12] not the rational relationship test that we apply in a due process analysis. See *Barrio* v. *San Manuel Div. Hosp. for Magma Copper Co., supra* at 104, 107 (State Constitution prohibited "abrogation" of right of action to recover damages for injury; statute of repose operated to "abrogate" that right); *Strahler* v. *St. Luke's Hosp., supra* at 12 (relying on "open" courts provision, not due process clause); *Sax* v. *Votteler, supra* at 665-667 (applying balancing test under State Constitution's "open courts" provision). Only one case, *Mominee* v. *Scherbarth, supra* at 274-277, found a due process

---

[11]The plaintiffs ignore the corollary to this argument, namely, that if the number and size of claims barred by this statute of repose are minimal, that means that very few plaintiffs are harmed by this provision and that, in fact, it is reasonable to expect that most plaintiffs will be able to bring their claims prior to the expiration of the seven-year statute of repose. It does not appear that, in its practical effect, G. L. c. 231, § 60D, is unduly harsh.

[12]The plaintiffs do not contend that G. L. c. 231, § 60D, violates art. 11 of the Massachusetts Declaration of Rights. The right to a remedy by recourse to the laws guaranteed by art. 11 does not prevent abrogation of common-law rights. See *Klein* v. *Catalano, supra* at 712-713. Thus, it does not prevent the Legislature from imposing or revising statutes of limitation or statutes of repose. See *id.*; *Plummer* v. *Gillieson*, 44 Mass. App. Ct. 578, 583 (1998).

violation and struck down such a statute under a rational relationship test.

By comparison, other courts that have considered medical malpractice statutes of limitation or repose[13] (including statutes setting significantly shorter deadlines than the statute of repose at issue here) have decided that such statutes do not violate either due process or State constitutional guarantees of access to the courts. See *Douglas* v. *Stallings*, 870 F.2d 1242, 1249-1250 (7th Cir. 1989) (upholding Indiana's two-year statute of repose for medical malpractice actions); *Holmes* v. *Iwasa*, 104 Idaho 179, 184 (1983) (two-year statute of repose); *Johnson* v. *St. Vincent Hosp., Inc.*, 273 Ind. 374, 403-405 (1980) (two-year statute of repose); *Valentine* v. *Thomas*, 433 So. 2d 289, 293-294 (La. Ct. App. 1983) (three-year statute of repose); *Choroszy* v. *Siew Tso*, 647 A.2d 803, 806-807 (Me. 1994) (three-year statute of repose); *Ross* v. *Kansas City Gen. Hosp. & Med. Ctr.*, 608 S.W.2d 397, 400 (Mo. 1980) (two-year statute of repose); *Colton* v. *Dewey*, 212 Neb. 126, 128-129 (1982) (ten-year statute of repose); *Harrison* v. *Schrader*, 569 S.W.2d 822, 827-828 (Tenn. 1978) (three-year statute of repose); *Aicher* v. *Wisconsin Patients Compensation Fund*, 237 Wis. 2d 99, 121-127 (2000) (five-year statute of repose).

The plaintiffs point out, quite correctly, that statutes of repose barring the claims of injured minors are more likely to cause the loss of valuable and meritorious claims than do such statutes barring claims by adults. Lacking either the practical wherewithal or the legal capacity to sue on their own behalf, children are dependent on their parents and guardians to bring their

---

[13]Some such statutes are designated statutes of "limitation," setting the time period from the date the cause of action "accrued." However, by specifying that a medical malpractice action "accrues" at the time of the underlying act of malpractice, and refusing to toll the statute until the minor plaintiff reaches the age of majority, such statutes of "limitation" function as the equivalent of our statute of repose. See, e.g., Idaho Code § 5-219 (1998) (complaint must be brought within two years of the time when the cause of action accrues, and "the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of"); Me. Rev. Stat. Ann. tit. 24, § 2902 (West 2000) ("Actions for professional negligence shall be commenced within 3 years after the cause of action accrues . . . . a cause of action accrues on the date of the act or omission giving rise to the injury"). For the sake of simplicity, we refer to all such statutes as statutes of "repose."

claims of medical malpractice before those claims become time-barred. A child's meritorious claim can thus be lost through no fault of the injured child.[14] The fact that the interests of minors are at stake does not, however, change the nature of our due process analysis. Under the statute of repose at issue in *Klein* v. *Catalano*, *supra*, claims could be barred even though the injury had not yet even occurred.[15] Recognizing that the statute would operate to abrogate any possible tort remedy for persons injured more than six years after completion of the allegedly negligent design or construction of a building, we determined that the due process analysis would be no different from that applied to "any other law that regulates economic activity." *Id.* at 712. The fact that some minors, due to parental neglect or ignorance (not present here) or to minors' unawareness of the extent and gravity of their injuries, will lose their ability to bring medical malpractice claims does not require us to conduct our due process analysis of this statute of repose with some heightened level of scrutiny.

4. *Equal protection.* The plaintiffs also contend that G. L. c. 231, § 60D, violates equal protection guarantees because it impermissibly distinguishes between medical malpractice claims based on the leaving of a foreign object in the patient's body and all other medical malpractice claims. Plaintiffs with claims involving foreign objects are subject only to the three-year statute of limitations from the date of accrual of the action, not to the seven-year statute of repose. All other medical malpractice plaintiffs are subject to both the three-year statute of limitations and the seven-year statute of repose. The statute governing

---

[14]Of course, this result flows from any elimination of the normal tolling provisions of G. L. c. 260, § 7. The dependence of minors on adults to bring their medical malpractice claims is not a product of the statute of repose, but a function of the Legislature's decision not to toll their medical malpractice claims to the age of majority. When G. L. c. 231, § 60D, was first enacted in 1975, its three-year statute of limitations applied to minors, notwithstanding the tolling provisions of G. L. c. 260, § 7. See St. 1975, c. 362, § 5. We held that "[t]he Legislature may assume 'that the interest of minors will be protected by their guardians, or by others who are near to them.' " *Cioffi* v. *Guenther*, 374 Mass. 1, 4 (1977), quoting *Sweet* v. *Boston*, 186 Mass. 79, 82 (1904).

[15]That statute of repose, G. L. c. 260, § 2B, also applies to claims by minors. *Tindol* v. *Boston Hous. Auth.*, 396 Mass. 515, 517 (1986).

medical malpractice claims by adults contains an identical provision, exempting plaintiffs with foreign object claims from its seven-year statute of repose. G. L. c. 260, § 4.

The distinction at issue involves no suspect classification, and the statute itself does not affect any fundamental right. As such, § 60D does not deny medical malpractice plaintiffs equal protection "as long as it is rationally related to the furtherance of a legitimate State interest." *Carter* v. *Bowie*, 432 Mass. 563, 567 (2000), quoting *Chebacco Liquor Mart, Inc.* v. *Alcoholic Beverages Control Comm'n*, 429 Mass. 721, 722 (1999). "[I]f there is any reasonably conceivable state of facts that could provide a rational basis for the classification," the classification will survive an equal protection challenge. *Chebacco Liquor Mart, Inc.* v. *Alcoholic Beverages Control Comm'n, supra* at 723, quoting *FCC* v. *Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). "Legislative line drawing 'requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line.' " *Chebacco Liquor Mart, Inc.* v. *Alcoholic Beverages Control Comm'n, supra*, quoting *FCC* v. *Beach Communications, Inc., supra* at 315-316. "[S]uch line drawing does not violate equal protection principles simply because it 'is not made with mathematical nicety or because in practice it results in some inequality.' " *Chebacco Liquor Mart, Inc.* v. *Alcoholic Beverages Control Comm'n, supra*, quoting *Dandridge* v. *Williams*, 397 U.S. 471, 485 (1970).

Controlling the cost of medical malpractice insurance, and establishing some definitive endpoint for claims of medical malpractice, are legitimate State interests. There is a rational basis for exempting malpractice claims involving foreign objects left in a patient's body from the definitive endpoint that is imposed on other medical malpractice claims. Problems of proof, and changes in the standard of care, do not plague foreign object cases, no matter how long ago the alleged malpractice occurred. The later discovery of the foreign object is, for all practical purposes, proof of some earlier negligence on the part of a health care provider. The Legislature could rationally decide that the risks of stale claims involving that specific type of medical malpractice were so low that they could, as a group,

safely be exempted from the seven-year statute of repose. By comparison, the passage of time makes other types of malpractice claims difficult to defend (see note 8, *supra*), such that an absolute deadline measured from the actual date of the act of malpractice may be viewed as appropriate.[16]

The plaintiffs argue that our own adoption of the discovery rule for all malpractice cases, and not just for foreign object cases, see *Franklin* v. *Albert*, 381 Mass. 611, 620 (1980), now precludes the Legislature from distinguishing such foreign object cases. Nothing in *Franklin* v. *Albert*, *supra*, concerned an equal protection challenge to such a classification. There we were considering whether to apply the discovery rule in determining when a medical malpractice claim accrued. At the time, there was no legislative pronouncement on the issue, *id.* at 616-617, and we decided to extend to medical malpractice claims the same discovery rule principles that we had applied to other tort claims, *id.* at 618-619. The defendant in that case suggested that, if we were to adopt such a discovery rule in the medical malpractice area, we should do so only for claims involving foreign objects. We rejected that suggestion because "the principle underlying the discovery rule applies whether the

---

[16]Other courts have found a rational basis for exempting foreign object claims from the usual statute of repose governing other medical malpractice claims, and therefore have held that such statutes do not violate Federal or State guarantees of equal protection. See *Allrid* v. *Emory Univ.*, 249 Ga. 35, 38 (1982) ("danger of belated, false or frivolous claims is eliminated" in foreign object cases); *Ross* v. *Kansas City Gen. Hosp. & Med. Ctr.*, 608 S.W.2d 397, 399 (Mo. 1980) (rational for Legislature to consider that "there is less likely to be as great a problem with stale evidence when a foreign object is left in the body than in the other types of malpractice cases"). See also *Adams* v. *Arthur*, 333 Ark. 53, 91-92 (1998); *Choroszy* v. *Siew Tso*, 647 A.2d 803, 808 (Me. 1994); *Jenkins* v. *Meares*, 302 S.C. 142, 147 (1990). The plaintiffs cite *Austin* v. *Litvak*, 682 P.2d 41, 49-53 (Colo. 1984), as finding no rational basis for distinguishing between foreign object claims and other malpractice claims with respect to a statute of repose. However, that equal protection analysis was part of a plurality opinion. A majority of the Justices were of the view that the statute in question did not violate equal protection guarantees. *Id.* at 54-55 (Dubofsky, J., specially concurring) (statute does not violate equal protection but does violate other State constitutional provisions). *Id.* at 55-56 (Rovira, J., concurring in part and dissenting in part) (no equal protection violation; Legislature could rationally conclude that foreign object plaintiffs "are in a special category exposed to unfair risks that require the tolling of the statute of repose").

malpractice consists of leaving a foreign object in the patient's body or of other negligence in diagnosis or treatment of the patient." *Id.* at 620. That we declined to draw such a distinction as a matter of common law does not mean that it is irrational for the Legislature to draw that distinction in a subsequent enactment. The rational basis test does not require that we agree with the Legislature's classifications; it only requires that there be some "reasonably conceivable state of facts that could provide a rational basis for the classification." *Chebacco Liquor Mart, Inc.* v. *Alcoholic Beverages Control Comm'n, supra* at 723, quoting *FCC* v. *Beach Communications, Inc., supra* at 313.

The plaintiffs again suggest that, because this particular legislation affects the rights of children, we should subject it to some higher level of scrutiny than the rational basis test normally applied to an equal protection analysis. We again reject that suggestion. While children face a whole range of conditions and circumstances not faced by adults, they are not a suspect class commanding stricter scrutiny of legislation that affects their interests. Of course, the distinction being drawn in this statute — distinguishing medical malpractice claims involving foreign objects from all other types of medical malpractice claims — has nothing to do with the age of the patient involved, and the statute governing medical malpractice claims of adults contains the identical seven-year statute of repose and the identical exemption for foreign object claims. See G. L. c. 260, § 4. The classification being challenged is not one based on age; children have not been singled out for any different treatment on this particular subject; and the distinction being challenged is not one that uniquely affects children. That children are governed by the same statute of repose as adults, and, like adults, exempted from that statute if their claim is based on a foreign object left in the body, does not provide any basis on which we would depart from the traditional rational basis analysis.[17]

5. *Continuing duty.* The plaintiffs' final theory is that their

_____

[17]We therefore distinguish those cases that have applied a heightened level of scrutiny and found an equal protection violation in the exemption for foreign object claims. See *Kenyon* v. *Hammer*, 142 Ariz. 69, 83 (1984) (apply-

claim was timely brought because the defendant had a "continuing duty" to treat Matthew such that a breach of that duty continued up until the time they sought out the opinion of another physician. They point first to two Massachusetts cases suggesting that a physician may be under a duty to provide ongoing follow-up care or treatment such that failure to do so can form the basis of a medical malpractice claim. See *Shannon* v. *Ramsey*, 288 Mass. 543 (1934); *Gray* v. *Kieger*, 27 Mass. App. Ct. 583 (1989). Neither case is apposite. In *Shannon* v. *Ramsey*, *supra*, we declined to find any ongoing duty to treat the patient where one defendant physician had consulted with the patient during only one visit, accompanied by the physician who was actually "in charge of the case." *Id.* at 547. Rather, a claim of negligence against that defendant had to be predicated solely on what he had done or not done during that one consultation visit, not on any later failure to attend to the plaintiff. *Id.* at 548.

In *Gray* v. *Kieger*, *supra*, the defendant was aware that an X-ray of the plaintiff's leg following a serious accident showed a suspicious lesion and was aware that the patient needed further X-rays. A follow-up appointment was scheduled, but the patient, not having been advised of the lesion, did not keep that appointment. The defendant then did nothing to contact the patient. Years later, the lesion proved malignant. The Appeals Court held that, on those facts, with a known condition that the physician knew required further follow-up, the physician could be held to have breached his duty of care by not alerting the patient to the presence of the lesion and not contacting the patient when he failed to attend the follow-up visit. *Id.* at 587. Nothing in *Gray* v. *Kieger*, *supra*, suggests that a physician who believes that the patient has reached the end of his needed treatment has some ongoing duty to that patient that is breached by failure to followup with that patient.

The plaintiffs also point to other jurisdictions where statutes

ing strict scrutiny because State Constitution granted "fundamental right" to bring action); *Carson* v. *Maurer*, 120 N.H. 925, 931-933 (1980) (because right to recover for personal injuries is "important substantive right," court applies "a more rigorous judicial scrutiny than allowed under the rational basis test" and instead considers "whether the challenged classifications are reasonable and have a fair and substantial relation to the object of the legislation").

of limitation or repose have sometimes been tolled while the plaintiff patient continues to receive treatment for the same condition from the defendant physician, even if the specific negligent act occurred earlier during that treatment. See *Raynor* v. *Kyser*, 338 Ark. 366, 370-373 (1999); *Tullock* v. *Eck*, 311 Ark. 564, 570 (1993); *Blanchette* v. *Barrett*, 229 Conn. 256, 274-278 (1994); *McDermott* v. *Torre*, 56 N.Y.2d 399, 405-406 (1982); *Fonda* v. *Paulsen*, 46 A.D.2d 540 (N.Y. 1975); *Schleicher* v. *Cupelo*, 182 Misc. 2d 392, 393-396 (N.Y. Sup. Ct. 1998); *Rowntree* v. *Hunsucker*, 833 S.W.2d 103, 106-108 (Tex. 1992).

Assuming, without deciding, that we would adopt some version of this continuing treatment doctrine for purposes of tolling our statute of repose,[18] the doctrine would not cover the present fact pattern. These cases stress that a statute of limitations or repose may be tolled while active treatment is still ongoing, and decline to toll the statute merely because of the ongoing existence of a passive doctor-patient relationship. See, e.g., *Raynor* v. *Kyser*, *supra* at 372 (continuous treatment doctrine requires "active, ongoing medical care and attention beyond the time of a specific negligent act or series of acts"; three and one-half year hiatus between visits defeats claim of continuous treatment); *Tullock* v. *Eck*, *supra* at 571 (patient's continued ingestion of prescribed medication is not "continuing treatment" in the absence of any further contact with defendant physician); *Rowntree* v. *Hunsucker*, *supra* (same); *McDermott* v. *Torre*, *supra* at 405 (continuous treatment doctrine "does not contemplate circumstances where a patient initiates return visits merely to have his or her condition checked"); *Schleicher* v. *Cupelo*, *supra* at 396 (continuous treatment doctrine does not toll statute of limitations "where no apparent treatment is prescribed and

---

[18]The doctrine appears contrary to the express terms of G. L. c. 231, § 60D, and G. L. c. 260, § 4, both of which provide that "in no event" may a claim be "commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury." See *Ewing* v. *Beck*, 520 A.2d 653, 659-661 (Del. 1987) (declining to adopt continuing treatment doctrine where Legislature had not included it within express wording of unambiguous statute of limitations). We need not decide the issue until we are confronted with a case that would potentially satisfy the requirements of the continuing treatment doctrine.

only monitoring is contemplated"). The plaintiffs rely primarily on *Blanchette* v. *Barrett, supra,* in which the court held that the jury could apply the continuous treatment doctrine despite the passage of two and one-half years during which the plaintiff did not see the defendant physician. In that case, however, the defendant had been the plaintiff's primary care physician for over twelve years, during which time there had been repeated regular visits; nothing had occurred to terminate that physician-patient relationship; and, when complications developed, the plaintiff attempted to schedule an appointment with the defendant for further care.[19]

Here, the defendant engaged in no ongoing treatment of Matthew after the conclusion of his physical therapy in January, 1990. Nothing further was prescribed for Matthew's condition; there were no visits or scheduled appointments and no expectation that he would need any such visits; and, when complications did emerge, the plaintiffs did not return to the defendant for further care. These facts fall far short of even the most indulgent application of the continuing treatment doctrine. Mere promises by the defendant that he would "provide all necessary follow-up care" and that he "would continue to monitor Matthew's rehabilitation and therapy until Matthew was fully recovered" do not mean that he was still continuing to "treat" Matthew following his last visit and final physical therapy session.

*Judgment affirmed.*

---

[19]The claim also included the allegation that the defendant had failed to pursue a known need for follow-up evaluation of a suspicious mass (similar to the claim in *Gray* v. *Kieger,* 27 Mass. App. Ct. 583 [1989]), such that the negligent conduct itself could be viewed as occurring subsequent to the last actual office visit. Indeed, the court relied on the related theory that there was a "continuing course of conduct" that comprised the negligence, and not just on the doctrine of "continuous treatment." *Blanchette* v. *Barrett,* 229 Conn. 256, 275-276, 279-280 (1994).